1998 OK CIV APP 89

**Paul W. ANDERSON and Estate of Ansil Ludwick, Jr., Plaintiffs/Appellants,**

**v.**

**STATE of Oklahoma, ex rel. John P. CRAWFORD, Insurance Commissioner, and Victore Insurance Company, a licensed insurer in the State of Oklahoma, Defendants/Appellees.**

No. 88767.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 9, 1998.

Gregory L. Mahaffey, Martha Martin, Mahaffey & Gore, P.C., Oklahoma City, for Plaintiffs/Appellants.

Orval Edwin Jones, James L. Chastain II, Oklahoma City, for Defendant/Appellee, State of Oklahoma.

Jody R. Nathan, Feldman, Franden, Woodard, Farris & Taylor, and Jerry Reed, Tulsa, and Bob Lake Grove, Oklahoma City, for Defendant/Appellee, Victore Insurance Company.

BUETTNER, Presiding Judge.

¶1 Plaintiffs/Appellants Paul W. Anderson (Anderson) and Estate of Ansil Ludwick, Jr. (Estate or Ludwick) appeal from the trial court's decision affirming an order of the Oklahoma Insurance Commission (Commission). Victore Insurance Company (Victore) filed a replevin action against Anderson after his employment with Victore was terminated. Victore sought to recover a company car. Anderson and Ludwick counterclaimed for proceeds allegedly due them under employment agreements. After the district court denied Victore's motion for partial summary judgment and instead ruled that the employment agreements were valid and enforceable, Victore sought relief in the Commission. In a proceeding of which Anderson and Ludwick had no notice, the Commission entered a consent order with Victore which found the employment agreements were void.

¶2 Anderson and Ludwick filed a motion to reopen the Commission proceeding, which was granted. After a hearing, the Commission again held that the agreements were void. On appeal, the district court then affirmed the Commission's order. It is the trial court's last order, affirming the Commission order, which Anderson and Ludwick appeal. Because of the deference we must afford administrative proceedings, and because Anderson and Ludwick have not demonstrated that reversal is required, we affirm the trial court's decision.

¶3 Anderson and Ludwick were employed by Victore as President and Executive Vice President, respectively. They also were directors of Victore. At Victore's October 7, 1992 Board of Directors' meeting, the directors voted to enter employment agreements with Anderson and Ludwick. The agreements were to incorporate their then-present salary and benefits. The employment agreements were identical except for the name of the office each held and their

salaries. The employment agreements were signed October 22, 1992. Anderson signed Ludwick's contract for Victore and Ludwick signed Anderson's contract for Victore. Article VI of the agreements has led to the instant dispute. Article VI provided that if, during the three year contract term, Victore terminated the agreement for any reason (with or without cause), Victore would be required to pay Anderson or Ludwick the contract payments through the end of the term.

¶ 4 The minutes of the October 7, 1992 Board meeting also indicate that Altus E. Wilder, III had sued the Board of Directors. Anderson and Ludwick had terminated Wilder's employment as Chairman and CEO with Victore in 1991. By July 1994, Wilder had regained control of Victore and terminated Anderson's and Ludwick's employment. Article IV, Paragraph 4.2, of the employment agreements provided Anderson and Ludwick each a car of their choice. Victore filed its replevin action against Anderson to recover the car provided by Victore under the employment agreement. In the replevin action, Anderson and Ludwick counterclaimed for their salary for the remainder of the contract term, as provided in Article VI.

¶ 5 Victore filed a motion for partial summary judgment seeking an order that Article VI was an unenforceable penalty clause. After the trial court ruled that Article VI was valid and enforceable, Wilder sent a letter to Insurance Commissioner John Crawford. Wilder informed the Commission in his letter that the employment agreements were "sweetheart" contracts entered without Commission approval under 36 O.S.1991 § 1655(b)(3)(iii). Wilder asserted his belief that even if the contracts had been submitted for Commission approval they would not have been approved because of the financial state of Victore at the time. Wilder requested the Commission order Victore to cease and desist all activity under the employment agreements and order Victore to void the agreements.

¶ 6 Without giving notice to Anderson or Ludwick, the Commission and Victore entered a consent order (no hearing was held) which found that Victore violated 36 O.S.1991 § 1655(b)(3)(iii) by entering management agreements with certain company officers without filing the agreements with the Commission or receiving the Commission's approval. The consent order ruled the management agreements null and void.

¶ 7 Anderson and Ludwick filed a motion to reopen the matter, alleging they were interested parties and did not receive notice of the proceedings. The motion to reopen was granted and a hearing was held February 6, 1996 to determine the issue of whether the employment agreements were "management contracts" requiring Commission approval. Anderson and Ludwick received notice of the hearing and appeared with counsel. At the conclusion of the hearing the hearing examiner noted that the issue of whether the agreements came within 36 O.S. 1991 § 1655(b)(3)(iii) was one of first impression and ordered the parties to submit briefs.

¶ 8 In its Findings of Facts and Conclusions of Law, the hearing examiner found that the Commission had jurisdiction to hear the matter pursuant to 36 O.S.1991 § 314 and that notice was given pursuant to 36 O.S.1991 § 316. The examiner further found that Victore Enterprises, Inc. (VEI) owns all of the issued and outstanding shares of Victore. VEI directs the management and policies of Victore by electing Victore's Board of Directors. The Board of Directors elects and employs Victore's officers, which included Anderson and Ludwick. The examiner found that Anderson and Ludwick held management positions with Victore because they were in positions of administrative authority. The examiner also found that at the Board meeting in which the contracts were voted on, no action was taken on a motion to discuss management contracts. And, Victore did not notify the Commission that it had entered into the employment agreements. The examiner found that the employment agreements were management and service contracts under § 1655(b)(3)(iii), because they employed Anderson and Ludwick to manage Victore. The examiner also found that the employment agreements violated 36 O.S.1991 § 2127 and would not have been approved by the Commissioner because they

subjected Victore to excessive charges, contained inequitable clauses, and did not contain fair and adequate standards of performance. On December 17, 1996, the district court entered its order that the hearing examiner's findings of fact and conclusions of law were confirmed in all respects.

¶ 9 Anderson and Estate appeal to this court pursuant to 75 O.S.1991 § 323. That section of the Administrative Procedures Act provides that either an aggrieved party or the agency may seek review of a final judgment of the district court by appeal to the Supreme Court. The grounds for reversal of an agency decision are enumerated in 75 O.S.1991 § 322.[1] Agency findings

may only be reversed if one of the requisites included in section 322 has been met. *City of Bixby v. State ex rel. Dept. of Labor,* 1996 OK CIV APP ——, 934 P.2d 364 (cert. denied). We may not reverse the agency's decision unless our review of the record leaves us with a firm conviction that a mistake has been made. *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission,* 1995 OK CIV APP ——, 900 P.2d 470 (cert. denied).

¶ 10 Anderson and Estate first argue that their employment agreements are not the type of management agreements embraced within § 1655(b)(3)(iii).[2] Anderson

1. 75 O.S.1991 § 322. Setting aside, modifying or reversing of orders—Remand—Affirmance

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

2. The text of 36 O.S.1992 Supp. § 1655(a) through (d) follows. Section 1655(b)(3)(iii), relating to approval of management agreements, was added in by Laws 1992, c 178, § 5, effective September 1, 1992.

§ 1655. Standards

(a) Transactions with Affiliates. Material transactions by registered insurers with their affiliates shall be subject to the provisions of Section 1604 of this title. The board of directors will be charged with exercising that degree of care which a prudent person would have exercised under similar circumstances. Material transactions shall be subject to the following standards:

(1) the terms shall be fair and reasonable;

(2) the books, accounts and records of each party shall be so maintained as to clearly and accurately disclose the precise nature and details of the transaction; and

(3) the insurer's surplus as regards policyholders following any dividends or distributions to shareholder affiliates shall be reasonable in relation to the insurer's outstanding liabilities and adequate to its financial needs.

(b) Insurance Commissioner's Approval Required.

(1) The prior written approval of the Commissioner shall be required for the following transactions between a domestic insurer and its affiliates: sales, guarantees, purchases, exchanges, loans or extensions of credit or investments which, based upon an annual aggregate, involve more than five percent (5%) of the insurer's admitted assets or twenty-five percent (25%) of the insurer's surplus as regards policyholders, whichever is less, as of the latest statutory financial statement filed with the Commissioner; provided, however, that the Commissioner must either approve or disapprove within thirty (30) days after receiving written notification from the insurer of the proposed transaction and failure to disapprove the proposed transaction within thirty (30) days shall constitute approval of the transaction;

(2) The prior written approval of the Commissioner shall be required for any transactions between a domestic insurer and its affiliates where the insurer is found by the

and Estate allege that the Commission therefore had no jurisdiction over the matter because the statute does not apply.[3] Title 36 O.S.1991 § 1655 is part of Article 16A of the Oklahoma Insurance Code. Article 16A addresses subsidiaries of insurers. See 36 O.S. 1991 § 1651 *et seq.*

¶ 11 Section 1655(b)(3) provides that the Commissioner's approval is required for certain transactions involving a domestic insurer and any person in its holding company system. Anderson and Estate agree that Victore is a domestic insurer. Anderson and Estate argue that only VEI is part of Victore's insurance holding company system. They further argue that neither Anderson or Ludwick fit the definition of affiliate in § 1651 and therefore cannot be part of Victore's insurance holding system.[4] However,

Commissioner to be in unsound condition or in such condition as to render its further transaction of insurance in Oklahoma hazardous to its policyholders or to the people of Oklahoma; provided, however, that the Commissioner must either approve or disapprove within ninety (90) days after written notification by the insurer and failure to disapprove the proposed transaction within ninety (90) days shall constitute approval of the transaction;

(3) The following transactions involving a domestic insurer and any person in its holding company system may not be entered into unless the insurer has notified the Commissioner in writing of its intention to enter into such transaction at least thirty (30) days prior thereto, or such shorter period as the Commissioner may permit, and the Commissioner has not disapproved it within such period.

(i) loans or extensions of credit to any person who is not an affiliate, where the insurer makes such loans or extensions of credit with the agreement or understanding that the proceeds of such transactions, in whole or in substantial part, are to be used to make loans or extensions of credit to, to purchase assets of, or to make investments in, any affiliate of the insurer making such loans or extensions of credit provided such transactions are equal to or exceed: (a) with respect to nonlife insurers, the lesser of three percent (3%) of the insurer's admitted assets or twenty-five percent (25%) of surplus as regards policyholders; (b) with respect to life insurers, three percent (3%) of the insurer's admitted assets; each as of the 31st day of December next preceding;

(ii) reinsurance agreements or modifications thereto in which the reinsurance premium or a change in the insurer's liabilities equals or exceeds five percent (5%) of the insurer's surplus as regards policyholders, as of the 31st day of December next preceding, including those agreements which may require as consideration the transfer of assets from an insurer to a nonaffiliate, if an agreement or understanding exists between the insurer and nonaffiliate that any portion of such assets will be transferred to one or more affiliates of the insurer;

(iii) all management agreements, service contracts and all cost-sharing arrangements; and

(4) The Insurance Commissioner shall promulgate reasonable rules and regulations governing the form and content of the notice

required pursuant to subsection (b) of this section.

(c) Nothing in this section shall supersede approvals granted under other sections of this title or transactions occurring prior to the effective date of this section.

\*    \*    \*    \*    \*    \*

3. Anderson and Estate briefly note that § 1655(b)(3)(iii), which provides that all management agreements, service contracts and all cost-sharing arrangements are among the transactions for which notice must be given to the Commissioner, and approval received, is followed by "and." The "and" leads to § 1655(b)(4) which provides that the Commissioner shall promulgate rules governing the notice required by § 1655(b). Anderson and Estate concede that the Commissioner's rules were adopted July 20, 1992 and approved by the governor (pursuant to 75 O.S.1991 § 253.D.2 on August 24, 1992). Anderson and Estate argue that the rules were not distributed to insurance companies until December 1, 1992, after their employment agreements were entered in October 1992. Thus there is no dispute that the rules were in place at the time the statute became effective September 1, 1992. Gratuitous distribution of the rules to insurance companies after that time is immaterial to their effectiveness. Appellants make no argument that the rules were not promulgated and approved in accordance with Oklahoma law.

4. The definitions provided in 36 O.S.1991 § 1651, for Article 16A follow:

**§ 1651. Definitions**

As used in this act, the following terms shall have the respective meanings hereinafter set forth, unless the context shall otherwise require:

(a) Affiliate. An "affiliate" of, or person "affiliated" with, the specific person, is a person that directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified.

(b) Commissioner. The term "Commissioner" shall mean the Insurance Commissioner, his deputies, or the Insurance Department, as appropriate.

(c) Control. The term "control" (including the terms "controlling", "controlled by" and

an "affiliate" is a person who controls or is controlled by or is under common control with the person specified. 36 O.S.1991 § 1651(a). "Control" means having the power to direct the management and policies of a person, whether through ownership or contract, unless the power results from an official position or corporate office held by the person. 36 O.S.1991 § 1651(c). Two or more affiliates, one of which is an insurer, comprise an insurance holding company system.

■ ¶ 12 Anderson and Ludwick, as president and executive vice president controlled Victore and were controlled by the Board of Directors. Therefore, Anderson, Ludwick, Victore and VEI were affiliates and, because Victore is an insurer, they comprised an insurance holding system. We therefore find that Article 16A was applicable to the situation presented by the instant case and that the Commission had jurisdiction.

¶ 13 Anderson and Estate argue that control is not present in their case because their power was the result of their official positions as corporate officers.[5] However, Anderson and Ludwick did not hold power solely due to their positions. They held power under their contracts and through their

voting rights. Additionally, Anderson and Ludwick qualify as "affiliates" because they were controlled by VEI and Victore Boards of Directors. We consequently agree with the examiner's determination that Anderson and Ludwick are "persons" within the meaning of § 1655(b)(iii).

■ ¶ 14 Anderson and Estate next argue that the Commission erred in determining that the employment contracts were "management agreements" under § 1655(b)(3)(iii). They argue that the employment agreements are not management agreements because they did not give Anderson or Ludwick the right to manage Victore. Anderson and Estate further argue that the statute is unconstitutionally vague, so that whether the agreements are "management agreements" under § 1655(b)(3)(iii) is not a decision for the Commissioner, but for the courts.

¶ 15 Article 2 of both Anderson's and Ludwick's contracts provides that they are employed as president and executive vice president, respectively, and shall perform duties customarily associated with those positions. We are unpersuaded by Anderson's and Estate's arguments that Anderson and Ludwick were not hired to manage Victore.

---

"under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if any person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing ten percent (10%) or more of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact in the manner provided in Section 4(I). The Commissioner may determine, after furnishing all persons in interest notice and opportunity to be heard and making specific findings of fact to support such determination, that control exists in fact, notwithstanding the absence of a presumption to that effect.

(d) Insurance Holding Company System. An "insurance holding company system" consists of two or more affiliated persons, one or more of which is an insurer.

(e) Insurer. The term "insurer" shall have the same meaning as set forth in 36 Oklahoma Statutes, Section 103, except that it shall not include

agencies, authorities or instrumentalities of the United States, its possessions and territories, the Commonwealth of Puerto Rico, the District of Columbia, or a state or political subdivision of a state.

(f) Person. A "person" is an individual, a corporation, a partnership, an association, a joint stock company, a trust, an unincorporated organization, any similar entity or any combination of the foregoing acting in concert, but shall not include any securities broker performing no more than the usual and customary broker's function.

(g) Securityholder. A "securityholder" of a specified person is one who owns any security of such person, including common stock, preferred stock, debt obligations, and any other security convertible into or evidencing the right to acquire any of the foregoing.

(h) Subsidiary. A "subsidiary" of a specified person is an affiliate controlled by such person directly, or indirectly, through one or more intermediaries.

(I) Voting Security. The term "voting security" shall include any security convertible into or evidencing a right to acquire a voting security.

**5.** See § 1651(c), supra note 4.

In the absence of authority that the Commission's determination that the contracts were management agreements was erroneous or otherwise violated 75 O.S.1991 § 322, we must defer to the agency's judgment. The insurance Commissioner is afforded power to enforce and administer provisions of the Insurance Code. 36 O.S.1991 § 307; *Jennings v. Globe Life & Accidental Insurance Co. of Oklahoma*, 1996 OK ——, 922 P.2d 622, 625.

¶ 16 We also are not persuaded that the term "management agreement" is unconstitutionally vague. An agreement made between an insurer and another person within its insurance holding company system, regarding the management of an entity in the insurance holding company system is fairly included in the term "management agreement." Additionally, the hearing examiner found that the employment agreements signed by Anderson and Ludwick were also service contracts because they required Anderson and Ludwick to perform "such other services" as Victore required. Section 1655(b)(3)(iii) includes service contracts in the list of transactions which must receive Commission approval. Anderson and Estate do not allege that the term "service contract" is unconstitutionally vague. Further, Victore's directors apparently discussed "management contracts" at the October 1992 Board meeting in which the employment agreements were entered. Thus, the Board of Directors' characterization of the agreements is consistent with the Commission's determination.

¶ 17 The hearing examiner also found the employment agreements were management contracts under 36 O.S.1991 § 2127.[6] Anderson and Ludwick do not allege that their contracts do not come within the definition provided in § 2127. Section 2127(a) requires management agreements to be filed with the Commissioner for approval. The examiner found that the contracts would not have received Commissioner approval because they meet all the grounds for disapproval listed in § 2127(b). Because

the employment contracts are management agreements requiring Commission approval under either section, we find no reason to reverse the examiner's ruling in this regard.

¶ 18 Anderson and Estate next argue that the Commission may only order parties to cease and desist activity under a contract subject to § 1655 if the action is in the best interest of policy holders, creditors or the public. 36 O.S.1991 § 1658.2(c). Anderson and Estate argue that the Commission may not make an order to cease and desist activity under a contract which has expired by its own terms. Anderson and Estate also argue that the Commission may only order activity to cease and desist if it appears the contract would not have been approved if it had been filed as required. Anderson and Estate rely on a statement made by the Commission's counsel in the hearing. Counsel for the Commission stated that "had these ... contracts been filed and approved ... we wouldn't be having this hearing." Anderson and Ludwick read this statement to be a concession that the agreements would have been approved. We do not reach the same conclusion. Counsel stated that if the contracts were filed and if the contracts were approved, then no hearing would be required. Counsel also stated that the Commission is not concerned with inner-company fights, rather the Commission must be concerned with the solvency of insurers. It was the solvency of Victore which resulted in the Commissioner's actions. The Commissioner alleged that if the contracts' provisions for payment for the full term were honored, Victore would have less than the minimum surplus required to operate as an insurer. We therefore find the Commission made its decision in consideration of the best interests of policyholders, creditors and the public.

¶ 19 Finally, Anderson and Estate argue that the notice of the hearing was insufficient because it stated the purpose of the hearing was to determine whether their licenses should be revoked, rather than mentioning the employment agreements. The

---

6. *The applicable part of § 2127 provides:*
   A. No domestic stock or material insurer shall make any contract whereby any person or persons is granted or is to enjoy in fact the management of the insurer, ..., unless such contract is filed with the Commissioner and be subject to his approval. This portion of § 2127 has been in substantially similar form since 1957.

notice of the hearing includes, under "allegations of fact" (1) that the respondent (Victore) entered into management agreements with certain officers of the company without the Department's approval, and (2) That Respondent failed to file the management agreements in a timely manner. We fail to understand how this notice was insufficient. Anderson and Ludwick did not complain about the notice at the hearing. Both attended with counsel and presented their case that the agreements should not be considered management agreements under 36 O.S. 1991 § 1655(b)(3)(iii). Indeed, the hearing was held in response to Anderson's and Ludwick's motion to reopen which was directed solely at the consent order in which Victore was ordered to cease and desist activity under the employment agreements. Although Anderson and Estate allege the notice failed to apprise them of the potential for the contracts to be declared void, this possible result is provided for in 36 O.S.1991 § 1658.2(c), and, the potential for such a result should have been obvious to Anderson and Ludwick since the contracts were voided in the consent order in response to which they sought to reopen the matter.[7]

¶ 20  We have been unable to find a case interpreting the term "management agreement" under § 1655(b)(3)(iii) or § 2127. The substance of § 1655(b)(3)(iii) has been widely adopted in other states, yet none of those statutes appears to have been interpreted regarding the agreements embraced by the term "management agreement." We agree with the examiner's determination that the issue is one of first impression. The employment agreements arguably fit the requirements of both § 1655(b)(3)(iii) and § 2127. The Commission's interpretation of these sections is not unreasonable, arbitrary, or capricious. Section 2127(B) provides that the Commissioner shall disapprove management contracts which subject the insurer to excessive damages, extend for an unreasonable length of time, do not contain fair and adequate standards of performance, or contain provisions which impair the interests of stockholders or members of the insurer. Based on this provision, we find the legislature could have intended for long-term employment agreements such as the instant ones to be subject to the Commissioner's approval in order to serve the public interest as outlined in § 2127(B). Considering these elements, along with the broad discretion we must afford to agency decisions, we affirm the Commission order and the district court's order.

AFFIRMED.

ADAMS, J., concurs.

HANSEN, J., dissents.

7.  Section 1658.2(c) provides:

(c) Whenever it appears to the Commissioner that any insurer subject to Article 16A of the Insurance Code or any director, officer, employee or agent thereof has engaged in any transaction or entered into a contract which is subject to Section 1655 of title 36 of the Oklahoma Statutes and which would not have been approved had such approval been requested, the Commissioner may order the insurer to cease and desist immediately any further activity under that transaction or contract. After notice and hearing the Commissioner may also order the insurer to void any such contracts and restore the status quo if such action is in the best interest of the policyholders, creditors or the public.