2000 OK CIV APP 96

**CARPENTERS LOCAL UNION NO. 329, Appellant,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF LABOR, and Charles D. Rhinehart, Appellees.**

No. 92,676.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 14, 2000.

---

**3.** *See* 63 O.S. Supp.1999 § 2–402(B)(2) and 21 O.S. Supp.1999 § 64.

Thomas F. Birmingham, Birmingham, Morely, Weatherford & Priore, Tulsa, Oklahoma, and George W. Velotta, II, Derryberry, Quigley, Solomon, Blankenship & Naifeh, Oklahoma City, Oklahoma, for Appellant.

Charles W. Ellis, Lawrence & Ellis, P.A., Oklahoma City, Oklahoma, for Appellee Rhinehart.

Kevin M. Abel, General Counsel, Ted D. Rossier, Assistant General Counsel, Teryl L. Williams, Staff Attorney, Oklahoma City, Oklahoma, for Appellee Oklahoma Department of Labor.

## OPINION

ADAMS, Judge:

¶ 1 After Carpenters Local Union No. 329 (Local) stopped paying his $620 monthly salary for service as President of Local, Charles Rhinehart filed a claim for unpaid wages with the Oklahoma Department of Labor (Department) pursuant to 40 O.S.Supp.1993 § 165.7. After a hearing before an Administrative Law Judge (ALJ) for Department, the ALJ issued an order requiring Local to pay Rhinehart $7,440. In so concluding, the ALJ reasoned that Local violated Section 31C of the Constitution of the United Brotherhood of Carpenters and Joiners of America (International) which provides, in pertinent part:

> The compensation of an officer, Business Representative or assistant Business Representative in effect at the time of nomination or appointment shall not be reduced during the term for which elected or appointed without his or her consent; provided, however, and notwithstanding the provisions of Section 31C or prior action of a Local Union or Council designating the term of an appointee, the term for which an officer or Representative is elected or appointed may be reduced or terminated, or the compensation therefore (sic) reduced, for valid economic reasons subject to the approval of the General President, whose decision may be appealed to the

General Executive Board under Section 53G.

¶ 2 As authorized by 40 O.S.Supp.1993 § 165.7(E), Local filed an appeal under the Administrative Procedures Act (APA), 75 O.S.1991 § 250 et seq., in the District Court for Oklahoma County. Following receipt of the record from Department and completion of briefing by all parties, the district court affirmed the ALJ's order. Local then filed this appeal.

¶ 3 Like the district court, our review is limited. We may set aside the agency's order only if we determine that one or more of the grounds listed in § 322 of the APA are shown by the record, and we may not disturb the agency's decision unless our review of the record leads us to a firm conviction that the agency is mistaken. *Anderson v. State ex rel. Crawford*, 1998 OK CIV APP 89, 964 P.2d 937. In four propositions, Local argues the record demonstrates grounds for reversal: (1) Rhinehart waived any procedural or substantive rights he had under the International's Constitution by execution of documents received in evidence by the ALJ; (2) Rhinehart was an "at-will" employee whose employment could be terminated by Local at any time for any reason; (3) Department lacked jurisdiction over Rhinehart's claim under Oklahoma law because the subject matter has been preempted by federal law; and (4) Rhinehart was fully compensated by alternate employment arrangements, and the ALJ's order results in his unjust enrichment. The first, second, and fourth propositions present questions concerning the existence of "reliable, material, probative and substantial competent evidence" in this record to support the ALJ's decision as required by § 322(1)(b) of the APA, and we may conveniently consider them together. The third proposition presents pure questions of law and is addressed first.

## PREEMPTION

¶ 4 According to Local, *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO v. Local 334, United Association of Journey-*

*men and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), holds that "any action alleging violation or interpretation of an international union's constitution falls *exclusively* within the jurisdiction of the federal courts under the Labor Management Relations Act, 29 U.S.C.A. § 185(a)." (Emphasis added; quotation from Appellants' Brief in Chief). This is a misstatement of the holding in *Local 334*.

¶ 5 The Court determined that federal courts had jurisdiction of an action between an international union and one of its locals to enforce the international union's constitution because § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), authorizes "[s]uits for violation of contracts ... between any ... labor organizations" representing employees in an industry covered by the LMRA. *The Court never referred to that jurisdiction as exclusive.* In *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), the Court specifically rejected the argument that a federal court's jurisdiction under § 185(a) was exclusive.[1] Even if Local is correct in asserting that Rhinehart's wage claim was an attempt to enforce a "labor contract," *i.e.*, International's Constitution, Oklahoma has concurrent jurisdiction to enforce that contract.

■ ¶ 6 Local also argues that any state law claim under 40 O.S.Supp.1993 § 165.7 is preempted by federal law, relying on *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and cases applying that decision. According to Local, *Garmon* holds that "state causes of action are presumptively pre-empted if they concern conduct that is actually or arguably prohibited or protected by the National Labor Relations Act."[2] Actually, *Garmon* holds at 359 U.S. at 244, 79 S.Ct. 773 "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 *of the National Labor Relations Act*,[3] or constitute an unfair labor practice under § 8,[4] due regard for the federal enactment requires that state jurisdiction must yield." (Emphasis and footnotes added). According to *Garmon*, this is so because Congress has committed enforcement of the law and initial resolution of conflicts concerning those activities to the National Labor Relations Board (NLRB).

¶ 7 The *Garmon* Court also cautioned, at 359 U.S. at 243–244, 79 S.Ct. 773 that its rule did not apply "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See *International Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018." The conduct in *Gonzales*, which *Garmon* apparently concluded was a "merely peripheral concern," was the alleged violation of the union constitution and by-laws in expelling a member. Considering the basic nature of the right to membership in a union, we are unable to see how allegations that an officer's salary was eliminated in violation of the union constitution are any more of a concern than a dispute over membership.

¶ 8 Local has not demonstrated how the activity in question here, eliminating the salary of a union officer, is arguably protected or prohibited by § 7 or § 8 of the National Labor Relations Act,[5] or how the NLRB might have jurisdiction over this dispute. Rhinehart's wage claim under Oklahoma law was not preempted by the fact that the ALJ applied International's Constitution to resolve the claim.[6]

---

1. *Courtney* involved an action in state court against an employer to enforce the terms of a collective bargaining agreement.

2. As this title was used in *Garmon*, it apparently referred to 29 U.S.C. §§ 151–158 and 159–169.

3. 29 U.S.C. § 157.

4. 29 U.S.C. § 158

5. Local has not explained how this activity is arguably protected or prohibited by *any* provision of the National Labor Relations Act.

6. Other cases relied upon by Local involved collective bargaining agreements. The Courts all held that the actions had to be brought as actions for breach of contract under § 301 of the LMRA. The "preemption" in those cases refer to the fact that the claim would be controlled by federal law. See *California v. Briley*, 939 F.2d 790 (9th Cir.1991); *National Metalcrafters v. McNeil*, 784 F.2d 817 (7th Cir.1986); and *Majewski v. B'Nai*

## LOCAL'S FACT–BASED ARGUMENTS

### Factual Background

¶ 9 Rhinehart was elected President of Local in 1991 for a three-year term and re-elected in 1994. Shortly after his election in 1991, Local's members voted to pay him monthly, for services as President, a sum equal to one week's wages for a general carpenter foreman. He received that salary until December of 1996. Local says the decision to cease paying Rhinehart the wages he claims are due was based on a decision by International to transfer the "business" of Local, and other unions like it, into the Great Plains District Council (Council).

¶ 10 This consolidation became effective January 1, 1997, and according to the by-laws adopted for Council, local unions could not have any employees except those performing clerical duties. To facilitate this transfer of power, Rhinehart and the rest of the executive board members of Local executed the following letter dated May 14, 1996, addressed to the General President of International (the May 14 Letter).

We, the undersigned, Executive Board members of [Local], agree and authorize [International]("UBC") to restructure our labor organization into a Full Service District Council ("Council") pursuant to Section 6(A) and Section 26 of the UBC Constitution, with the power vested in such Council to include, but not be limited to the following: the establishment and assignment of dues check–0ff (sic) from the members of the affiliated local unions to the Council rather than to the local unions; appointment of all business agents and organizers who will be paid and employed by the Council rather than the affiliated local union; appointment of a full-time council executive officer; and authority to negotiate all collective bargaining agreements.

Furthermore, we hereby expressly waive the provisions of the UBC Constitution, including, but not limited to the following: Section 6(A), 53(G) and 53(H). We also expressly waive the provisions

under Section 304 of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. 464) and any and all other state or federal claims or rights, if any to challenge the implementation of a full-service council.

All of the signatures, including Rhinehart's, were followed by an indication of the signer's office in Local.

¶ 11 During much of the time that Rhinehart served as President of Local, he was also employed as apprenticeship coordinator by Local 329 Joint Apprenticeship and Training Committee (JATC) and was paid the equivalent of three weeks salary at a foreman's scale, or approximately three times the amount he was receiving from Local for his services as President. JATC administers a trust formed pursuant to the provisions of the collective bargaining agreement between Local and various construction contractors who use carpenters. The trust is funded by the payment of funds withheld from the wages of carpenters working for signatory contractors under the collective bargaining agreement.

¶ 12 In December, 1996, the members of JATC voted to pay Rhinehart the equivalent of full-time pay for four weeks. The beginning of this additional pay coincided with the end of Rhinehart's payments from Local. If the payments from Local and JATC are considered together, Rhinehart continued to receive as much or more pay after January 1, 1997, as he did before.

¶ 13 Local presented evidence that JATC increased Rhinehart's pay in order to prevent him from losing money when Council became effective and produced evidence of a letter which Local's witness said was dictated by Rhinehart in which he acknowledged this arrangement. However, Rhinehart denied directing the preparation of such a letter and contended his employment with JATC was unconnected with his duties as President of Local. According to Rhinehart, the JATC pay increase was intended to bring his salary into line with the work he was already performing. He denied any agreement to ac-

B'Rith International, 721 F.2d 823 (D.C.Cir. 1983). We do not have a collective bargaining agreement here, and Local has not suggested

that the application of "federal law" would have resulted in a different interpretation or enforcement of the "contract."

cept the increased JATC salary in lieu of his salary for services as President of Local.

## Waiver

 ¶ 14 Local argues that the ALJ was required to conclude that Rhinehart waived whatever rights he had under International's Constitution when he signed the May 14 Letter. For two reasons, we hold that the ALJ was free to conclude otherwise. First, the only evidence in this record indicates that Rhinehart executed the May 14 Letter in his representative capacity as President of Local. Oklahoma law presumes that an agent of a disclosed principal intends to bind only the principal by the agent's acts, and the agent is not bound in an individual capacity unless that intent is clearly shown to exist. *Hall v. Farmers Insurance Exchange,* 1985 OK 40, 713 P.2d 1027.

 ¶ 15 Second, Local produced no evidence that at the time he signed the May 14 Letter, Rhinehart knew he was waiving his right to have his salary continued under Section 31C of International's Constitution. Waiver is the voluntary or intentional relinquishment of a known right. In order to show waiver, Local was required to show that, at the time he signed the May 14 Letter, Rhinehart had either actual or constructive knowledge of his rights under Section 31C, and all the material facts upon which they depended. *See Faulkenberry v. Kansas City Southern Railway Company,* 1979 OK 142, 602 P.2d 203. The record contains no evidence that on May 14, 1996, Rhinehart had any knowledge that under the consolidation, Local would be prevented from paying the salary of its President. This record contains substantial evidence to support the conclusion that Rhinehart did not waive the protections of Section 31C of International's Constitution.

## At–Will Employment

 ¶ 16 Local contends it could terminate Rhinehart's salary because he was an at-will employee. This argument overlooks evidence that members voted to pay that salary to Rhinehart for his services as President, an office to which he was elected to successive three-year terms. Local presented no evidence that Rhinehart had been removed as President of Local during the period covered by the ALJ's award. The members' actions, combined with the provisions of International's Constitution, supported the conclusion that Rhinehart had an implied contract to receive the salary during his term in office until his salary was discontinued pursuant to Section 31C or the membership changed the compensation of the president to be effective with the next term. *See Gilmore v. Enogex,* 1994 OK 76, 878 P.2d 360.

## JATC Satisfaction of Local's Obligation

 ¶ 17 Funds like those administered by JATC are a narrow exception to the provisions of 29 U.S.C. § 186(a) by which Congress generally outlawed payments by an employer to a labor organization covered by the statute. Congress specifically exempted funds like those administered by JATC under § 186(c), but those funds are to be used only for the purposes for which the funds were created. *See Arroyo v. U.S.,* 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959). Given this limitation on use of JATC's funds, the ALJ could properly infer that the increase in Rhinehart's salary was intended to cover an expense for which this fund was created and was not being used to satisfy Local's unrelated obligation to pay Rhinehart for services as President of Local. The record contains substantial evidence to support the ALJ's decision that Rhinehart's JATC salary did not satisfy Local's obligation.

## CONCLUSION

¶ 18 Our review of the record fails to identify any basis on which we may set aside Department's decision under § 322 of the APA. The district court correctly affirmed Department's decision, and we affirm the order of the district court.

¶ 19 AFFIRMED.

¶ 20 HANSEN, V.C.J., and JOPLIN, J., concur.