BURGESS v. STATE ex rel OKLA. DEPT. OF ENVIRONMENTAL QUALITY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BURGESS v. STATE ex rel OKLA. DEPT. OF ENVIRONMENTAL QUALITY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BURGESS v. STATE ex rel OKLA. DEPT. OF ENVIRONMENTAL QUALITY
2019 OK CIV APP 7
Case Number: 115428
Decided: 05/16/2018
Mandate Issued: 01/30/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 7, __ P.3d __

 

MISTA BURGESS, Plaintiff/Appellant,
v.
THE STATE OF OKLAHOMA, ex rel OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY, and THE STATE OF OKLAHOMA, ex rel OKLAHOMA MERIT PROTECTION COMMISSION, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

Mark Hammons, Leah Roper, HAMMONS, GOWENS, HURST & ASSOCIATES, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Mike Hunter, OKLAHOMA ATTORNEY GENERAL, Kimberly Heaton, Gary Henry, ASSISTANT ATTORNEYS GENERAL, Oklahoma City, Oklahoma, for Defendants/Appellees

JERRY L. GOODMAN, JUDGE:

¶1 Mista Burgess (Burgess) appeals from a September 28, 2016, order of the district court affirming an order of the Oklahoma Merit Protection Commission (MPC). Based on our review of the facts and applicable law, we affirm.

BACKGROUND

¶2 Burgess was a 16-1/2 year unclassified employee of the Oklahoma Department of Environmental Quality (DEQ) when she was discharged from employment on May 15, 2014. Prior to discharge, Burgess had received "Exceeds Standards" on seven of her last ten Performance Evaluations and was deemed "multi-talented and very competent." However, General Counsel Martha Penisten (Penisten) and Deputy General Counsel Sarah Penn (Penn) assert that for some time prior to Burgess' discharge there was a strained working relationship, noting Burgess undermined them by going around them to the Executive Director Steve Thompson and Deputy Director Jimmy Givens. Burgess was apparently close or favored by the Executive Director Steve Thompson, Deputy Director Givens, and Director of Administrative Services, Wendy Caperton, a known close friend.

¶3 Steve Thompson subsequently retired and in December of 2013, Scott Thompson (Thompson) was appointed as Executive Director. Thompson reassigned Burgess to a new division, the Land Protection Division, and demoted Caperton.[1] Prior to her demotion, and in her previous role as agency liaison on budgetary matters, Caperton had become friends with Representative Don Armes, a member of the House Appropriations and Budget Committee and chairman of its subcommittee on Natural Resources and Regulatory Services, under which appropriations subcommittee DEQ fell. As a result of Caperton's close friendship, Burgess got to know Representative Armes as well.

¶4 Beginning in December of 2013, Burgess and Caperton began communicating with Representative Armes about DEQ's budget for the fiscal year 2014-2015. Burgess asserts she revealed to Representative Armes that the DEQ Water Quality Division had misrepresented in the 2013-2014 budget the number of full-time employees (FTEs) needed to implement the Public Water Supply Program (PWS), that the number was intentionally inflated, and that DEQ had no intention of hiring the number of personnel budgeted.

¶5 DEQ disputes 1) that it misrepresented or inflated the funding or number of FTEs in the 2013-2014 budget; and 2) that Burgess never mentioned the FTE issue to Representative Armes, citing her own statement: "[t]hey were talking to me about the PWS fees and the only thing I ever said was that they don't need that extra 1.5 million in extra appropriation. That's all I ever said." Rather, DEQ asserts Burgess, Caperton, and Representative Armes were involved in a plan to obtain extensive budget cuts to DEQ's 2014-2015 budget to exact revenge for their demotion, transfer, salary cuts, and other perceived slights. A DEQ investigator tape recorded conversations with Burgess where they discussed communications with Representative Armes and cuts to DEQ's budget. These cuts included a $12.5 million cut that would be over and above the standard cuts other agencies were going to receive.[2] Burgess made the comment that she "thought we were fighting for one or two million dollars to be taken," "[t]o help, what, bring down the house?," "They've stolen . . . Don [Armes] is screwing over DEQ. He's screwing them hard and royal. This is his last hoorah," and "that would be sweet revenge for me if that were just--if I could work for [the Oklahoma Municipal League], I don't think there'd be a better place for me--I mean, this just couldn't be a better place to perfect my revenge."

¶6 On or about May 7, 2016, Burgess' supervisors recommended her termination to Thompson. DEQ asserts they terminated Burgess for dishonest, insubordinate, inappropriate, and disruptive behavior after her transfer to the new division.[3] Burgess was discharged on May 15, 2014. After her discharge, DEQ found a January 17, 2014, email, with a scanned copy of handwritten notes, from Burgess to Representative Armes with questions that he could ask Thompson and Water Quality Division Director Chard-McClary during a budget hearing with Representative Armes to discredit and hurt the agency. It also included unflattering personal characterizations of them to "knock [them] off kilter" during the hearing.

¶7 Burgess appealed her discharge to the MPC, asserting she was unlawfully terminated in violation of the Oklahoma Whistleblower Act, 74 O.S.2011, § 840-2.5. The case was assigned to an administrative law judge (ALJ). A hearing was held on September 22, 23, and October 6 and 7, 2015. By order issued on January 7, 2016, the ALJ issued findings of fact and conclusions of law. The ALJ found:

1. There is insufficient evidence to find that [Burgess] communicated to Rep. Armes her belief that DEQ had intentionally budgeted for more FTE in FY 2013-2014 than they intended to hire.

2. The evidence is sufficient to find that [Burgess] was involved in a conspiracy with Wendy Caperton and Rep. Don Armes to harm DEQ by imposing deep budgetary cuts in FY 2014-2015.

3. There is insufficient evidence to find that [Burgess'] communications to Rep. Armes were protected activities as provided by the Whistleblower Act.

4. There is insufficient evidence to find [Burgess'] discharge was the result of any protected communications in violation of the Whistleblower Act.

5. There is insufficient evidence to find that the discharge of [Burgess] by Scott Thompson for loss of confidence and loss of trust is a pretext to cover up a prohibited activity by [DEQ].

¶8 The ALJ ultimately denied Burgess' petition and upheld her discharge from employment. Burgess filed a petition for review in the Oklahoma County District Court on February 1, 2016. By order entered on September 28, 2016, the district court affirmed the MPC order. Burgess appeals.

STANDARD OF REVIEW

¶9 An appellate court may not disturb an order of an administrative agency unless it is erroneous under 75 O.S.2011, § 322. Oklahoma Corp. Comm'n v. Bauer, 1997 OK CIV APP 83, ¶ 5, 951 P.2d 124, 126. Title 75 O.S.2011, § 322(1) provides a court may set aside, modify, or reverse an administrative order if it "determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are":

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, . . . including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or

(g) because findings of fact, upon issues essential to the decision were not made although requested.

Section 322(3) provides that "the reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant."

¶10 In Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ., 1981 OK 29, ¶ 10, 626 P.2d 316, 320, the Oklahoma Supreme Court stated:

Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by the judiciary. A court of review may not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises . . . . If the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free of error, the decision of the agency must be affirmed.

"On appeal from an administrative decision, the appellate courts, whether the District Court, the Court of Civil Appeals or the Supreme Court, apply the same standards of review directly to the administrative record." Bauer, 1997 OK CIV APP 83, at ¶ 5, 951 P.2d at 126.

ANALYSIS

¶11 On appeal, Burgess contends the district court erroneously affirmed the MPC, asserting the ALJ made various legal and factual errors in the January 7, 2016, order. Those assertions of error will be combined and discussed as follows.

1. General Discussions with Representative Armes

¶12 Burgess contends she had general communications with Representative Armes that are protected under Oklahoma's Whistleblower Act. Burgess maintains protection is not limited to specific statements under the Act. Title 74 O.S.2011, § 840-2.5 provides:

A. This section shall be known and may be cited as the "Whistleblower Act". The purpose of the Whistleblower Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities. No conviction of any person shall be required to afford protection for any employee under this section.

B. For purposes of this section, "agency" means any office, department, commission or institution of the state government. No officer or employee of any state agency shall prohibit or take disciplinary action against employees of such agency, whether subject to the provisions of the Merit System or in unclassified service, for:

1. Disclosing public information to correct what the employee reasonably believes evidences a violation of the Oklahoma Constitution or law or a rule promulgated pursuant to law;

2. Reporting a violation of the Oklahoma Constitution, state or federal law, rule or policy; mismanagement; a gross waste of public funds; an abuse of authority; or a substantial and specific danger to public health or safety;

3. Discussing the operations and functions of the agency, either specifically or generally, with the Governor, members of the Legislature, the print or electronic media or other persons in a position to investigate or initiate corrective action; or

4. Taking any of the above actions without giving prior notice to the employee's supervisor or anyone else in the employee's chain of command.

¶13 Burgess notes the ALJ found she "had discussions and other communications with Rep. Armes concerning the agency's budget for fiscal year 2014-2015." However, she contends the ALJ erroneously found there was insufficient evidence that these communications were protected activities under the Act. Burgess maintains the ALJ erroneously construed § 840-2.5(B)(3) of the Act, as it is clear she was discussing the operations and functions of the agency with a member of the Legislature. Burgess contends § 840-2.5(B)(3) does not require that the discussions with the Legislature be about an illegal action, misuse of funds, or any other specific misconduct. Rather, the Act protects general discussions with Legislators.

¶14 DEQ disagrees, asserting the Act must be construed as a whole. DEQ notes the purpose of the Act is "to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting those activities." Id. at § 840-2.5(A). Thus, DEQ maintains that to be entitled to protection under the Act, one must be engaged in the reporting of wrongful governmental activities. DEQ asserts that Burgess was not reporting wrongful governmental activity to Representative Armes but rather was engaged in a plan with Representative Armes and Caperton to damage DEQ's budget.

¶15 Statutory construction presents a question of law. Blitz U.S.A., Inc. v. Oklahoma Tax Commission, 2003 OK 50, ¶ 6, 75 P.3d 883, 885. "The goal of any inquiry into the meaning of a legislative act is to ascertain and give effect to the intent of the legislature." Id. at ¶ 14, 75 P.3d at 888. The Legislature "is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." Id. Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882, 886. The Court presumes that the Legislature expressed its intent and that it intended what it expressed. Id. Statutes are interpreted to attain that purpose and end, championing the broad public policy purposes underlying them. Id. "Where a statute is plain and unambiguous, it will not be subject to judicial construction, but will be given the effect its language dictates." Blitz U.S.A., Inc., at ¶ 14, at 888. "Only where the intent cannot be ascertained from a statute's text, as occurs when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed." Id.

¶16 Title 74 O.S.2011, § 840-2.5 is the Legislature's pronouncement on Oklahoma's public policy regarding whistleblowers. The plain, clear, unmistakable, unambiguous, and unequivocal language of § 840-2.5 clearly provides that the stated purpose of the Act is to encourage and protect the reporting of wrongful governmental activities and to deter retaliation against state employees for reporting these activities. Id. at § 840-2.5(A). Therefore, general discussions, even those with a Legislator, which do not report wrongful governmental activities, are not protected by the Act. Accordingly, the ALJ correctly found Burgess' general discussions with Representative Armes are not protected communications under the Act.

2. Specific Discussions with Representative Armes

¶17 For her next assertion of error, Burgess contends the ALJ erred in limiting consideration of her protected communication to a single statement. Burgess further contends the ALJ erroneously required her to corroborate her testimony, imposing unequal standards on her evidence as compared to DEQ's. DEQ disagrees, asserting the ALJ weighed the evidence and determined Burgess did not meet her burden of proof.

¶18 Specifically, Burgess argues she was terminated for having discussions with Representative Armes regarding DEQ's budget or the FTE issue. Burgess testified she had general communications with Representative Armes concerning DEQ's budget as well as specific communications regarding the inaccurate FTE numbers submitted by DEQ in its 2013-2014 fiscal year budget. Burgess asserted DEQ requested 10 new FTE's to implement the PWS program, that the number was intentionally inflated, and that it had no intention of hiring the number of personnel budgeted.

¶19 DEQ, conversely, asserts it terminated Burgess for dishonest, insubordinate, inappropriate, and disruptive behavior after her transfer to the new division. DEQ presented evidence that it had not presented inaccurate FTE numbers to the Legislature and had in fact only requested 4 new FTE's in the budget. In addition, Thompson specifically denied knowledge of the FTE issue or the specific content of the alleged protected statement Burgess made to Representative Armes. Finally, DEQ presented evidence that Burgess, Representative Armes, and Caperton were involved in a plan to harm DEQ and to obtain extensive budget cuts to DEQ's 2014-2015 budget to exact revenge for their demotion, transfer, salary cut, and other perceived slights.

¶20 The ALJ specifically found that "there [was] insufficient evidence to find that [Burgess] communicated to Rep. Armes her belief that DEQ had intentionally budgeted for more FTE in FY 2013-2104 than they intended to hire." The ALJ's order does reference that Burgess presented no corroborative evidence to support her assertion that she informed Representative Armes of the FTE issue. However, a review of the order provides the ALJ carefully reviewed and weighed the evidence presented. The ALJ noted Burgess never mentioned the FTE issue during her conversations with a DEQ investigator, instead expressing concerns that she did not have a bigger role in the $12.5 million budget cut, in "hurting" the agency, in "bringing down the house," in "screwing over DEQ," and her "sweet revenge" against DEQ. Further, the ALJ found the evidence supported Thompson's testimony that he had no knowledge of any issue with the FTE count in the 2013-2014 budget until after Burgess was discharged or that Burgess informed Representative Armes of any issue.

¶21 We find no error. After reviewing the appellate record, we cannot find the ALJ's rulings were clearly erroneous in view of the evidence produced at the hearing. Although there was conflicting evidence on issues of fact, there is substantial evidence supporting the ALJ's findings. "An appellate court may not substitute its judgment for that of the agency on the latter's factual determinations," and "[a]n agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error." Oklahoma Department of Public Safety v. McCrady, 2007 OK 39, ¶ 10, 176 P.3d 1194, 1200-1201 (footnotes omitted). The ALJ may draw reasonable inferences and can refuse credence to any portion of testimony deemed unworthy of belief. Under the APA, this Court may set aside the ALJ's decision only if we determine one or more of the grounds listed in 75 O.S.2011, § 322 are shown, and we may not disturb the decision "unless our review leads us to a firm conviction (the agency) was mistaken." Carpenters Local Union No. 329 v. State ex rel. Dept. of Labor, 2000 OK CIV APP 96, ¶ 3, 11 P.3d 1257, 1259. Based upon our review of the record, we do not find any of the grounds listed in § 322 to be present. This assertion of error is therefore denied.

3. Causation

¶22 Burgess further argues the ALJ erred in failing to apply the proper analysis of causation. Initially, Burgess contends O.A.C. 455:10-3-6(b)(3) sets forth the correct standard of causation to be used by the ALJ. This section provides:

Sufficient evidence or information shall be provided which causes the Executive Director to believe there is a causal connection between the alleged protected activity and the disciplinary action. For purposes of this section, causal connection means such evidence or information which shows that the disciplinary action was taken in relationship to the alleged protected activity.

¶23 This section specifically addresses the standard of review the Executive Director of the MPC applies in determining whether sufficient evidence exists to conclude a violation may have occurred and to permit an appeal to precede through the MPC system. As the ALJ correctly noted, this is similar to a preliminary hearing.

¶24 Burgess further contends the ALJ wrongly believed retaliation needed to be the sole factor instead of simply one factor, a significant factor. Burgess relies on several Oklahoma cases which utilize the significant factor test to determine whether an employer's actions were retaliatory. See e.g., Vasek v. Board of Cnty. Comm'rs., 2008 OK 35, 186 P.3d 928. We, however, do not believe it is necessary to engage in lengthy analysis regarding causation, because our task is to determine whether there is substantial evidence supporting the ALJ's conclusion that Burgess' discharge was not the result of a protected communication.

¶25 In the present case, Burgess had the burden of proving she made a protected communication under the Act, that she was disciplined, and was disciplined as a result of making that protected communication. See 74 O.S.2011, § 840-2.5; O.A.C. 455: 10-9-2(f)(2). Burgess essentially asks this Court to adopt a new test, i.e., whether the protected communication was a significant factor in her discipline. We decline to do so. This is a function of the Legislature.

¶26 In the present case, the ALJ found the evidence supported Thompson's loss of trust and confidence in Burgess to be based upon information received from the DEQ investigator. The investigator first came to Thompson in January of 2014 with information that Caperton and Representative Armes planned to use his position to ravage DEQ's budget as revenge for Caperton's demotion and salary cut. The investigator subsequently learned of Burgess' involvement in the plan. Based on the evidence presented, the ALJ found there was sufficient evidence to find that Burgess was involved in a conspiracy with Caperton and Representative Armes to harm DEQ's budget. Accordingly, the ALJ found "[t]here [was] insufficient evidence to find that [Burgess'] discharge was the result of any protected communications in violation of the Whistleblower Act." She further found there was "insufficient evidence to find that the discharge of [Burgess] by Scott Thompson for loss of confidence and loss of trust [was] a pretext to cover up a prohibited activity by [Burgess]."

¶27 We find no error. After reviewing the appellate record, we cannot find the ALJ's ruling was clearly erroneous in view of the evidence produced at the hearing. The ALJ's findings and conclusions are thorough and supported by the evidence. This assertion of error is therefore denied.

4. Defenses

¶28 Finally, Burgess contends the ALJ erroneously found a conspiracy, a defense not recognized under the Act. Burgess contends the defenses to liability are set forth in § 840-2.5(C).[4]

 
Any person who has authority to take, direct others to take, recommend or approve any personnel action shall not take or fail to take any personnel action with respect to any employee for filing an appeal or testifying on behalf of any person filing an appeal with the Oklahoma Merit Protection Commission. This section shall not be construed as prohibiting disciplinary action of an employee who discloses information which the employee:

1. Knows to be false;

2. Knowingly and willfully discloses with reckless disregard for its truth or falsity; or

3. Knows to be confidential pursuant to law.

¶29 DEQ disagrees, noting it did not plead a conspiracy defense. Rather, the ALJ, after reviewing the totality of the evidence, determined that Burgess was conspiring with Representative Armes and Caperton to harm DEQ and its budget.

¶30 We have reviewed the record. We do not find that the ALJ relied on an improper defense. Rather, upon her review of the evidence, the ALJ determined that Burgess did not meet her burden of proving she had a protected communication with Representative Armes and that she was discharged as a result of that communication. Rather, the evidence established that Burgess was involved in a plan to harm DEQ and its budget. As we have previously discussed, there is substantial evidence in the record to support the ALJ's determination.

¶31 Having reviewed the record in totality, we find no basis upon which to reverse the MPC's order. Accordingly, the district court's September 28, 2016, order affirming the MPC's order is proper and is affirmed.[5]

¶32 AFFIRMED.

BARNES, P.J., and RAPP, J., concur.

FOOTNOTES

[1] Under the prior executive director, Burgess had worked on the agency's annual budget and was responsible for coordinating with all DEQ divisions and pulling together the needed funding and personnel positions required for the agency's 2013-2014 fiscal year budget. Thompson did not assign Burgess to work on the 2014-2015 budget.

[2] The State budget was released on May 16, 2014, and DEQ's budget was cut by over 20%, including $1.5 million appropriation previously received to allow DEQ to administer the PWS program, a 5.5% budget cut received by most agencies, and an additional $12 million taken from the agency's revenue account.

[3] Some of these behaviors included: 1) Burgess insisted on preparing a Notice of Violation even though instructed by Thompson to prepare an Order, and bypassed her supervisor to convince Deputy Director Givens this was the correct course; and 2) Burgess attempted to sabotage a fellow attorney.

[4] Burgess further raises the "same result defense," asserting it is also an improper defense under the Act. However, Burgess acknowledges that DEQ did not plead and the ALJ did not rely on this defense in its order. Accordingly, this defense will not be discussed.

[5] Burgess' request to strike DEQ's answer brief is denied.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1997 OK CIV APP 83, 951 P.2d 124, 69 OBJ 116, OKLAHOMA CORPORATION COMMISSION v. BAUER
Discussed at Length
 2000 OK CIV APP 96, 11 P.3d 1257, 71 OBJ 2392, CARPENTERS LOCAL UNION NO. 329 v. STATE ex rel DEPT. OF LABOR
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 2003 OK 50, 75 P.3d 883, BLITZ U.S.A., INC. v. OKLAHOMA TAX COMMISSION
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed
 2008 OK 35, 186 P.3d 928, VASEK v. BOARD OF COUNTY COMMISSIONERS
Discussed
 1981 OK 29, 626 P.2d 316, Tulsa Area Hospital Council, Inc. v. Oral Roberts University
Discussed
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA