2003 OK 50

**BLITZ U.S.A., INC., Protestant/Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Respondent/Appellee.**

No. 96,883.

Supreme Court of Oklahoma.

May 13, 2003.

As Corrected May 22, 2003.

Rehearing Denied Sept. 29, 2003.

Robert O. O'Bannon and Hal Wm. Ezzell, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, OK, for Appellant.

Douglas B. Allen, General Counsel and J.L. Miller and Lyn Martin-Diehl, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.[1]

OPALA, V.C.J.

¶ 1 The sole issue tendered on certiorari is whether the state income tax exemption for royalty earned by an inventor extends to a company's net income from the sale of products it also invents and manufactures. We answer in the negative.

## I

## ANATOMY OF LITIGATION

¶ 2 Blitz U.S.A., Inc. (taxpayer or the company) is a closely-held corporation located in Miami, Oklahoma. It has elected for federal and state income tax purposes Subchapter S tax status under the United States Internal Revenue Code.[2] As a Subchapter S corporation, taxpayer's corporate earnings are reportable and taxable as the personal income of its three individual shareholders. After filing its original income tax returns for fiscal years 1993 through 1995, taxpayer came to believe that a portion of its previously reported net distributable income in each of those years was in fact exempt as royalty earned by an inventor within the meaning of 74 O.S.1991 § 5064.7.A.1.,[3] one of two tax incentive provisions contained in the Inventor's Assistance Act (the Act).[4] To take advantage of this exemption, taxpayer in 1998 filed amended state income tax returns for fiscal years 1993–1995. The company similarly claimed the inventor's royalty exemption in its original return for fiscal year 1996, also filed in 1998.

¶ 3 The Audit Division of the Oklahoma Tax Commission (the Commission) disallowed the exemption. Taxpayer timely filed

---

1. Identified herein are only those counsel for the parties whose names appear on the *certiorari* briefs in this court.

2. *See* the provisions of 26 U.S.C. § 1361 *et seq.* In *Bufferd v. Comm'r of Internal Revenue,* 506 U.S. 523, 524–525, 113 S.Ct. 927, 928–929, 122 L.Ed.2d 306 (1993), the United States Supreme Court explained that the purpose of the special tax status afforded by Subchapter S of the Internal Revenue Code, is "to eliminate tax disadvantages that might dissuade small businesses from adopting the corporate form and to lessen the tax burden on such businesses." The primary advantage of a Subchapter S corporation is the avoidance of taxation at both the corporate and individual shareholder level. The income of a non-electing corporation (a C corporation) is subject to the corporate tax and the income of its shareholders in the form of any distributions the corporation makes to them is subject to a second, individual tax. Under Subchapter S, taxable income is determined at the corporate level, but is passed through to the S corporation's shareholders and taxed to them at their individual rates, in a manner similar to the tax treatment afforded partnerships. *See* the terms of 68 O.S.2001 § 2365 for the provisions of the Oklahoma Income Tax Act relating to Subchapter S tax treatment.

3. *See infra* text at page 5 of this opinion for the provisions of 74 O.S.1991 § 5064.7.A.1.

4. The Act is codified at 74 O.S.2001 § 5064.1 *et seq.*

a protest, which was heard before an Administrative Law Judge (the ALJ) on 28 June 2000. The Audit Division at the hearing challenged (1) the capacity of a *corporate* taxpayer to claim the status of inventor under the Act [5] and (2) the right of taxpayer to apply the inventor's royalty exemption to the company's net income from the sale of products it develops and manufactures.

¶ 4 The ALJ initially issued Findings of Fact, Conclusions of Law, and a Recommendation in favor of taxpayer on both issues, but upon the Audit Division's motion, the ALJ reconsidered and ruled that, although taxpayer qualifies as an inventor under the Act,[6] its net income from the sale of products it also invents and manufactures is not eligible for the inventor's royalty exemption. The ALJ recommended that taxpayer's protest be denied. The Commission agreed, adopted the ALJ's reconsidered Findings, Conclusions, and Recommendation, entered its order denying taxpayer's protest, and declared its ruling to have precedential value for the agency.[7]

¶ 5 Taxpayer appealed and the Court of Civil Appeals, Division I, reversed, holding that the word "royalties" as defined in the Act [8] is broad enough to include net income

from the sale of products invented and manufactured by the same company. We granted certiorari upon the Commission's petition and now hold that a company's net income from the sale of products it also invents and manufactures does not constitute royalty earned by an inventor within the meaning of § 5064.7.A.1. of the Act.

## II

### STANDARD OF REVIEW

 ¶ 6 The dispositive issue in this case is whether taxpayer's net income from products it invents, manufactures, and sells is exempt from state income tax as royalty earned by an inventor. Resolution of the pivotal issue calls for ascertaining the meaning of the phrase "royalty earned by an inventor" as used in the text of 74 O.S.1991 § 5064.7.A.1.[9] Statutory construction presents a question of law.[10] The Commission's legal rulings, like those made by a district court judge, are on review subject to an appellate court's plenary, independent and nondeferential reexamination.[11] We hence review *de novo* the Commission's attribution of meaning to the critical part of the statutory text.[12]

5. The Commission argued that taxpayer could not be considered the inventor of the products at issue for purposes of the Act's tax incentive provision because it was not listed as the inventor on the federal patent applications for those products. Taxpayer was instead the assignee of the patents applied for by one or more of its employees who participated in the creative process leading to the products' development.

6. That portion of the Commission's order relating to the capacity of taxpayer to claim the status of an inventor under the Act was not challenged by a Commission counter-appeal and is not tendered as an issue now before this court.

7. *See* the provisions of 68 O. S, 2001 § 221, which fashion the procedure to be followed in taxpayer protests of Commission assessments. With respect to a Commission order disposing of a protest, § 221 states in pertinent part:
 "G. After removing the identity of the taxpayer, the Tax Commission shall make the order available for public inspection and *shall publish those orders the Tax Commission deems to be of precedential value.*" (emphasis added)

8. *See infra* text at page 6 of this opinion for the Act's definition of the term "royalties."

9. See *infra* text at page 5 of this opinion for the provisions of § 5064.7.A.1.

10. *Mangrum v. Fensco, Inc.*, 1999 OK 78, ¶ 4, 989 P.2d 461, 462; *Wilson v. Wilson*, 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212; *Anderson v. Dep't. of Human Services*, 1995 OK CIV APP 136, ¶ 9, 916 P.2d 846, 848.

11. *Manley v. Brown*, 1999 OK 79, ¶ 22 n. 30, 989 P.2d 448, 456 n. 30; *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125,¶ 5, n. 1, 932 P.2d 1100, 1106, n. 1; *Baptist Medical Center v. Pruett*, 1999 OK CIV APP 39, ¶ 11, 978 P.2d 1005, 1008.

12. *Arrow Tool & Gauge v. Mead*, 2000 OK 86 ¶ 6, 16 P.3d 1120, 1123; *Wilson v. Wilson, supra* note 10 at ¶ 3, at 1212; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081,1084.

## III

### THE EXEMPTION FOR ROYALTY EARNED BY AN INVENTOR EXTENDS ONLY TO THAT WHICH AN INVENTOR RECEIVES *QUA* INVENTOR IN EXCHANGE FOR THE RIGHT TO USE THE FRUIT OF THE INVENTOR'S CREATIVE ACTIVITY

#### A. The Pertinent Provisions of the Act

■ ¶ 7 Prominent among the various services and benefits bestowed by the Act are tax incentives for inventors and for in-state businesses that manufacture a product developed in this state by an inventor. As originally enacted in 1987, the tax incentive *for inventors,* § 5064.7.A.1., stated:

"A. The following incentives shall be available to inventors for products developed under this act . . . :

1. *Income* earned by an inventor from a product developed under this act shall be exempt from state income tax for a period of seven (7) years from January 1 of the first year in which such *income* is received as long as the manufacturer remains in the state; . . ." (emphasis added)

¶ 8 In 1988 the Legislature amended this provision by modifying the introductory clause and by replacing the word "income" with the word "royalty" in subsection 1. *Accordingly, throughout the fiscal years relevant to this case, the tax incentive afforded inventors stated:*

"A. The following incentives shall be available to inventors for products developed and manufactured in this state . . . ; provided, to qualify for the incentives, the product shall be patented or have patent pending pursuant to federal law and shall be registered with the Department of Commerce:

1. *Royalty* earned by an inventor from a product developed and manufactured in this state shall be exempt from state income tax for a period of seven (7) years from January 1 of the first year in which such *royalty* is received as long as the manufacturer remains in the state; . . ." (emphasis added)

¶ 9 As originally enacted in 1987, the tax incentive *for businesses* that manufacture a locally invented product, 74 O.S.1991 § 5064.7.A.2., granted manufacturers a tax incentive similar to that afforded inventors. It stated:

"A. The following incentives shall be available to . . . businesses who manufacture . . . products [developed under this act]:

2. Income earned by a business that manufactures a product developed under this program that is directly attributable to such product shall be exempt from state income tax for a period of seven (7) years from January 1 of the first year in which such income is received."

This provision was also amended in 1988 to abolish the exemption for income and replace it with a limited exclusion for depreciable property directly used in the manufacture of locally invented products. *Accordingly, throughout the fiscal years relevant to this case, the tax incentive for manufacturers stated:*

"A. The following incentives shall be available to . . . instate manufacturers of . . . products [developed and manufactured in this state]; provided, to qualify for the incentives, the product shall be patented or have patent pending pursuant to federal law and shall be registered with the Department of Commerce:

2. An instate manufacturer of a product developed in this state by an inventor shall be eligible for a tax credit, as provided for in Section 2357.4 of Title 68 of the Oklahoma Statutes. In addition such manufacturer may exclude from Oklahoma taxable income, or in the case of an individual, the Oklahoma adjusted gross income, sixty-five percent (65%) of the cost of depreciable property purchased and utilized directly in manufacturing the product. The maximum exclusion shall not exceed Five Hundred Thousand Dollars ($500,-000.00). . . . For the purposes of this paragraph, "depreciable property"

means machinery, fixtures, equipment, buildings, or substantial improvements thereto, placed in service in this state during the taxable year."

¶ 10 Although the Commission does not dispute that taxpayer, in its capacity as the manufacturer of locally invented products, is entitled to the tax incentives available under this provision,[13] we quote it here because the Commission contends that the 1988 amendment to the manufacturer's tax incentive bears on the meaning of the inventor's tax incentive.

¶ 11 The Legislature also defined the term "royalties" in the 1987 version of the Act and has left that definition substantially unchanged since then. As originally enacted, the Act's substantive provisions did not use the singular form of the word, but only the plural form—"royalties."[14] The singular form of the word—"royalty"—was added to the substantive provisions of the Act in 1988 when the Legislature substituted "royalty" for "income" in the amendment to § 5064.7.A.1. The statutory definition of royalties provides:

" 'Royalties' means all things of value received by an inventor in connection with the licensing, rental or sale of a product patented, in patent pending, or trademarked pursuant to federal law."[15]

### B. The Parties' Contentions[16]

¶ 12 Taxpayer urges that § 5064.7.A.1. and the Act's definition of the pivotal term "royalties" are clear and unambiguous, plainly authorizing taxpayer to treat as exempt its net income from the sale of manufactured articles that originated as taxpayer-created

inventions and were subsequently patented. According to taxpayer, net income from the sale of taxpayer-invented products meets each and every condition of the Act's definition of royalties. It is a(a) thing of value (b) received by an inventor (c) in connection with the sale (d) of patented products. Taxpayer urges that its identity as the inventor of the products at issue and its identity as their manufacturer is inseparable so that when it receives payment from its customers for the manufactured products, it is as an inventor, and not just as a manufacturer and seller, that the payment is received.

¶ 13 The Commission posits several reasons why taxpayer's construction of the Act's inventor's tax incentive is unsustainable. First, the Commission argues that royalty income is a predicate to the royalty exemption and taxpayer did not report any royalty income on its federal or state tax returns. Second, the Commission asserts that by replacing the generic word "income" with the word "royalty" in the 1988 amendment to § 5064.7.A.1., the Legislature intended to narrow the exemption available to inventors. Third, the Commission asserts that the elimination of the word "income" from both § 5064.7.A.1. and § 5064.7.A.2. in the 1988 amendments shows that the Legislature had come to reject the idea of a sweeping exemption from state income tax for both inventors and manufacturers.

### C. The Inventor's Royalty Exemption Does Not Encompass Net Income from a Trade or Business

¶ 14 The scope of the statutory royalty exemption afforded inventors from state

---

13. In its amended FY93–95 and original FY96 return, taxpayer claimed it was entitled to this tax exemption for manufacturers and the Commission agreed.

14. *See* the provisions of 74 O.S.1991 § 5064.6, which authorize the relevant state agency to receive a fee for providing assistance to an inventor in an amount not to exceed "ten percent (10%) of all royalties from any product developed under the inventors assistance program for a period of ten (10) years from the first day after royalties are received from the commercial licensing, rental or sale of the product."

15. 74 O.S.2001 § 5064.3.6.

16. An application for leave to file a brief amicus curiae after the normal briefing cycle set for the party to be supported was submitted by the Honorable Robert M. Kerr to the Court of Civil Appeals. To receive permission, an amicus must show extraordinary cause. *See* the provisions of Rule 1.12, Rules of the Supreme Court, 12 O.S. 2001 ch. 15, App.1. There is no documentation in the record to show that COCA granted amicus permission to file his brief and COCA's opinion makes no reference to that brief. In the absence of the required permission, consideration of the amicus brief on certiorari must be withheld.

income tax is a question of first impression. It requires us to pass upon a legislative enactment's meaning. The goal of any inquiry into the meaning of a legislative act is to ascertain and give effect to the intent of the legislature.[17] The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses.[18] Hence, where a statute is plain and unambiguous, it will not be subject to judicial construction, but will be given the effect its language dictates.[19] Only where the intent cannot be ascertained from a statute's text, as occurs when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.[20] Statutes that provide an exemption from taxation are to be strictly construed against the claimant.[21]

¶ 15 We do not agree with taxpayer that the scope of the Act's royalty exemption is clear and unambiguous where, as here, a manufacturer sells to retailers or consumers products the company itself invents. Ordinarily an inventor sells *an invention* to a manufacturer who then fabricates and sells the product as a manufactured article of commerce. In that case, the income received by the inventor from the manufacturer may be generated *in connection with* the product's sale,[22] but it is attributable to the invention and is completely separate and distinct from the income received by the manufacturer *for* the manufactured article. Where as here the inventor and manufacturer are one and the same, it is unclear whether the Legislature intended to treat taxpayer as an inventor with respect to *income received as the manufacturer and seller* of the taxpayer-invented articles.

■ ¶ 16 Tax exemptions must be construed sensibly in order to give effect to the governing legislative scheme.[23] The Act's overall purpose is to encourage and assist inventors in developing the fruit of their creative intellectual activity into commercially viable products for the benefit of the state's economy.[24] To achieve this end, the Legislature determined that two distinct groups should receive tax incentives, inventors and manufacturers. The Legislature clearly intended in § 5064.7 to provide different tax treatment for the income generated by each.

¶ 17 When an invention is sold, the inventor transfers the product of his (or her) mind and skill; when a patented invention is sold, the inventor transfers the governmentally-conferred right to exclude others from making, using or selling the handiwork of the inventor's creativity. An inventor sells intangible intellectual property in return for which the inventor receives a royalty.[25] A manu-

**17.** *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

**18.** *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438, 460; *TXO Production Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969.

**19.** *Ross v. Peters,* 1993 OK 8, ¶ 9, n. 17, 846 P.2d 1107, 1119, n. 17; *TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶ 5, 829 P.2d 15, 20; *Forston v. Heisler,* 1961 OK 198, ¶ 11, 363 P.2d 949, 951.

**20.** *Cooper, supra* note 17 at ¶ 10, at 468; *TXO, supra* note 18 at ¶ 7, at 969; *Cox v. Dawson,* 1996 OK 11, ¶ 6, 911 P.2d 272, 276.

**21.** *R.R. Tway, Inc. v. Okla. Tax Comm'n,* 1995 OK 129, ¶ 26, 910 P.2d 972, 978; *Bert Smith Road Mach. Co., Inc. v. Okla. Tax Comm'n,* 1977 OK 75, ¶ 9, 563 P.2d 641, 643; *Phillips Petroleum Co. v. Okla. Tax Comm'n,* 1975 OK 146, ¶ 10, 542 P.2d 1303, 1305; *Dairy Queen of Okla., Inc. v. Okla. Tax Comm'n,* 1951 OK 356, ¶ 4, 238 P.2d 800, 801–02; *Magnolia Petroleum Co. v. Okla. Tax Comm'n,* 1958 OK 124, ¶ 20, 326 P.2d 821, 825; *Forston v. Heisler, supra* note 19 at ¶ 11, at 951.

**22.** Royalties paid to an inventor are ordinarily tied to the volume of sales of the manufactured product. *See* Black's Law Dictionary (5th ed.) at 1195 where royalty is defined as:

"A payment which is made to ... an inventor in respect of each article sold under the patent. Royalty is share of product or profit reserved by owner for permitting another to use the property...."

**23.** *Fairlawn Shopper, Inc. v. Director, Div. of Taxation,* 98 N.J. 64, 484 A.2d 659, 665 (1984); *Princeton Township. v. Tenacre Found.,* 69 N.J.Super. 559, 174 A.2d 601, 604 (App.Div. 1961).

**24.** *See* 74 O.S.2001 § 5064.2. for a statement of the Legislature's purpose to provide assistance to inventors so that their activities might result in economic benefits to the state and nation.

**25.** Royalty is defined in The Random House College Dictionary (rev. ed.) at 1150 as:

"[A] compensation or portion of the proceeds paid to the owner of a right, as a patent or oil

facturer, on the other hand, sells tangible personal property. What it earns in return is the manufacturer's profit from a trade or business. Royalty and profit each represent a distinct source of income.

¶ 18 Payment received by a company from the manufacture and sale of products of its own invention is not *"received by an inventor"* as required by the definition of royalties nor is it *"earned by an inventor"* within the meaning of § 5064.7.A.1. The tax incentive for inventors *encompasses only that which is received by an inventor qua inventor* for the sale of the only thing an inventor has to sell—a creative idea. It does not include that which an inventor/manufacturer receives from the sale of a product it invents after the product is manufactured as a tangible article of commerce.

¶ 19 This conclusion is supported by the amendment made to the inventor's tax exemption in 1988. When construing a statute which has been amended, we are mindful that the legislature may have intended either (a) to effect a change in the existing law, or (b) to clarify that which previously appeared doubtful.[26] If the definition of royalties is understood as taxpayer advocates the amendment to the inventor's tax exemption makes little sense because it would have neither clarified nor changed the existing law. A clarification is attempted only where there is some doubt as to a law's meaning or effect. The record provides no proof that such doubt had arisen with respect to this law. If such doubt did exist, the Legislature surely would have chosen a less confusing way to clarify it. Taxpayer contends that the Legislature rejected the common understanding of royalties as a subset of income and instead redefined it as essentially synonymous with income. For the Legislature to have substituted for income in § 5064.7.A.1. a word that is commonly understood as far more restrictive than income would have been misleading if its intent was to clarify

that income in its broadest sense was to remain exempt.

¶ 20 Similarly, applying the meaning ascribed to the statutory definition by taxpayer, the 1988 amendment's substitution of the word royalty for income would not have changed the existing law since the two words are in taxpayer's view virtually synonymous. Before the amendment the statute *expressly* exempted income and after the amendment, according to taxpayer's construction of the definition, the statute continued to provide a sweeping exemption for income but renamed it royalties.

¶ 21 We also agree with the Commission that the 1988 amendment to the Act's tax incentive for manufacturers strongly suggests that the Legislature would not have approved imputing the manufacturer's profit to the inventor as his or her royalty where the effect would be to provide a complete exemption from income tax for the manufacturer's profit.

¶ 22 Taxpayer's argument that it is not seeking to exempt manufacturing income but only royalty it receives as an inventor is belied by the manner in which taxpayer reported that income on its federal tax returns and on its state tax returns for purposes other than this exemption. In both instances, taxpayer failed to report any royalty income. Moreover, taxpayer's vice-president and treasurer testified at the hearing that taxpayer is primarily a manufacturing company that earns its income from the sale of its products to retailers and customers. He further testified that taxpayer receives no royalty income and that it would not pay as royalty in an arm's length transaction one hundred percent (100%) of its profits. Finally, there is no evidence that taxpayer's customers thought they were paying, or had any intent to pay, a royalty to the inventor of the product.

or mineral right, for the use of it ... an agreed portion of the income from a work paid to its author, composer, etc., usually a percentage of the retail price of each copy sold ... a royal right, as over minerals, granted by a sovereign to a person or corporation ... the payment made such a right."

**26.** *Haney v. State*, 1993 OK 41, ¶ 12, 850 P.2d 1087, 1091; *Magnolia Pipe Line Co. v. Okla. Tax Comm'n*, 1946 OK 113, ¶ 11, 167 P.2d 884, 888.

¶ 23 Finally, the royalty exemption provided by the Act has a counterpart in the Oklahoma Income Tax Act. The provisions of 68 O.S.2001 § 2359.D. state:

"Royalty earned by an inventor from products developed and manufactured in this state shall be exempt from the tax imposed by Section 2355 of this title for a seven-year period, pursuant to the provisions of Section 5064.7 of Title 74 of the Oklahoma Statutes."

The Oklahoma Income Tax Act does not define the word "royalty," but as is the case with many terms employed in the state income tax code, meaning is to be supplied by the Internal Revenue Code.[27] As it turns out, neither the Internal Revenue Code nor the federal regulations implementing it define the term "royalty,"[28] but the Internal Revenue Service has defined that term in a revenue ruling as a payment that relates "to the use of a valuable right" such as a trademark, trade name, or copyright.[29] The word has also been defined by the United States Court of Appeals for the Tenth Circuit as "compensation paid to owners of a patent or copyright for the use of it or the right to act under it."[30] The exemption for royalty in the Oklahoma Income Tax Act and the exemption for royalty in the Inventors Assistance Act are one and the same exemption and must be construed harmoniously.[31] Net income from the sale of a fully manufactured article of commerce does not meet the definition of royalty as adopted for use in the federal and state tax codes.

## IV

## SUMMARY

¶ 24 Taxpayer seeks, pursuant to the Inventors Assistance Act, to exempt from net distributable income the net income from the sale of products invented and manufactured by taxpayer. The Legislature intended to make available to inventors an income tax exemption limited to payments an inventor receives as an inventor for the intellectual property constituting the invention. Net income from a trade or business earned by a manufacturer from the sale of products of which the manufacturer is also the inventor is not exempt as royalty earned by an inventor.

¶ 25 THE COURT OF CIVIL APPEALS' OPINION IS VACATED AND THE ORDER OF THE OKLAHOMA TAX COMMISSION IS AFFIRMED.

¶ 26 WATT, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SUMMERS and BOUDREAU, JJ., concur.

¶ 27 KAUGER, J., concurs in part and dissents in part.

¶ 28 HARGRAVE and WINCHESTER, JJ., dissent.

**27.** See the provisions of 68 O.S.2001 § 2353.3., which state:

"Any term used in Section 2351 et seq. of this title shall have the same meaning as when used in a comparable context in the Internal Revenue Code, unless a different meaning is clearly required."

**28.** *Texas Farm Bureau v. United States,* 53 F.3d 120, 123 (5th Cir.1995).

**29.** *See* Revenue Ruling 81–178. The Internal Revenue Service's interpretive rulings do not have the force and effect of regulations, but an agency's interpretations and practices are given considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use. *Davis v. United States,* 495 U.S. 472, 484, 110 S.Ct. 2014,

2022, 109 L.Ed.2d 457 (1990); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933).

**30.** *Comm'r of Int. Rev. v. Affiliated Enterprises, Inc.,* 123 F.2d 665, 668 (10th Cir.1941).

**31.** "In the construction of ... statutes, harmony, not confusion, is to be sought. The true rule has often been said to be that, where two acts or parts of acts are reasonably susceptible of a construction that will give effect to both and to the words of each, without violence to either, it should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict." *Forston v. Heisler,* 1959 OK 122, ¶ 10, 341 P.2d 252, 255, *quoting Rogers v. Okla. Tax Comm'n,* 1952 OK 388, ¶ 17, 263 P.2d 409, 412.