2008 OK CIV APP 19

**In the Matter of the Sales Tax PROTEST OF BETTS TELECOM OKLAHOMA, INC., and Dayton Betts and Howard Betts, as Officers of Betts Telecom Oklahoma, Inc., and as Individuals.**

**No. 104,216.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 25, 2008.

Thomas G. Ferguson, Jr., Walker, Ferguson & Ferguson, Oklahoma City, OK, for Appellants Betts Telecom Oklahoma, Inc., Dayton Betts and Howard Betts, as Officers of Betts Telecom Oklahoma, Inc., and as Individuals.

Douglas B. Allen, General Counsel, Liessa Lieppman, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee Oklahoma Tax Commission.

LARRY JOPLIN, Judge.

¶ 1 Protestants/Appellants Betts Telecom Oklahoma, Inc., and Dayton Betts and Howard Betts, as Officers of Betts Telecom Oklahoma, Inc., and as Individuals (collectively, Betts) seeks review of an order of the Okla-

homa Tax Commission *en banc* assessing additional sales tax, interest and penalty on the labor portion of Betts' telecommunication wiring contracts. In this appeal, Betts complains the OTC erred as a matter of both fact and law in its application of 68 O.S.2001 § 1354(A) and O.A.C. 710:65–19–329 as the basis for the additional sales tax assessment.

¶2 Betts is a "wire puller" or "cabling contractor" which installs cable and wiring capable of carrying voice, data and/or video signals inside residences or businesses. Betts runs the cable/wiring from various locations inside of the residence or business to the "demarcation point," the characteristic gray box mounted to the exterior of the structure, and referred to as the "consumer side."

¶3 The provider of voice, data and/or video services to the residence or business consumer then connects its cable/wires from its central office to the demarcation point, referred to as the "service provider side," for distribution inside the residence or business across the cable/wiring installed by Betts. The service provider generally maintains the cable/wiring on the "service provider side," i.e., from the demarcation point to the providers central office.

¶4 Other than wiring, Betts does not sell, lease, install or service any telecommunications equipment to the residential or business consumer. Betts charges for cable/wiring installation are not billed to the consumers telephone number. Of the fees Betts charges for installation of cable and wiring, labor constitutes about forty percent (40%).

¶5 After an audit, OTC sought to assess Betts, as a "vendor" of "telecommunication services," additional unremitted sales tax, interest and penalty allegedly due under 68 O.S.2001 § 1354(A)(4) and O.A.C. 710:65–19–329. Betts timely protested.

¶6 At a hearing before an administrative law judge (ALJ), Betts presented testimony to show it did not know how the wiring it installed would be used by its customers, or that it should be collecting sales tax. Betts argued that § 1354 imposed a tax only on "installation and construction charges"

"charged to the consumers telephone number or account," and that the plain language of § 1354 consequently clearly evinced the legislative intent to tax "installation and construction charges" *only* on the "service provider side" of the demarcation point, not on the "consumer side." So, said Betts, because none of its charges were billed to the customer, it was not a "vendor" of "telecommunication services" under § 1354(A)(4).

¶7 On consideration of the testimony, and applying well-accepted rules of statutory construction, the ALJ concluded that, given the broad language of § 1354(A)(4), and the legislature's long-standing acquiescence to the OTC's construction of § 1354 as expressed by O.A.C. 710:65–19–329, Betts was considered a vendor of "telecommunication services" under § 1354(A)(4), required to collect and remit sales tax on the labor portion of its cabling services.

¶8 The ALJ consequently recommended denial of the protest.[1] The OTC *en banc* unanimously adopted the findings and conclusions of the ALJ. Betts appeals.

¶9 "Fundamental to statutory construction is to ascertain and give effect to legislative intent." *Humphries v. Lewis,* 2003 OK 12, ¶7, 67 P.3d 333, 335. Legislative intent is determined by the plain language of a statute, and if the language is clear, there is no need for construction. *First Am. Bank and Trust v. Oklahoma Indus. Fin. Auth.,* 1997 OK 155, ¶19, 951 P.2d 625.

¶10 Further, we ordinarily defer to the interpretation of a statute by the agency charged with its administration, particularly "when the administrative construction is definitely settled and uniformly applied for a number of years." *Oral Roberts University v. Tax Commission,* 1985 OK 97, ¶10, 714 P.2d 1013, 1014–1015. That is to say:

... The long-continued construction of a statute by a department of government charged with its execution is entitled to great weight and should not be overturned without cogent reasons; and where the legislature has convened many times dur-

1. With slight modification not affecting the mer- its of this appeal.

ing this period of administrative construction without expressing its disapproval, such silence may be regarded as acquiescence in or approval of the administrative construction.

*Peterson v. Oklahoma Tax Commission,* 1964 OK 78, 395 P.2d 388, 391; *Oral Roberts University,* 1985 OK 97, ¶ 12, 714 P.2d at 1016. "In such cases the administrative construction will not be disturbed except for very cogent reasons, provided that the construction so given was reasonable." *Oral Roberts University,* 1985 OK 97, ¶ 10, 714 P.2d at 1015.

■ ¶ 11 The Oklahoma Legislature enacted § 1354 in 1981, and, by amendment in 1992, subjected the sale of "telecommunication services," *"including all installation and construction charges,"* to tax. 68 O.S.Supp.1992 § 1354(D). (Emphasis added.) At the time of Betts' assessment, § 1354 continued to treat the sale of "telecommunication services," "including all installation and construction charges," as subject to tax:

There is hereby levied upon all sales, not otherwise exempted in the Oklahoma Sales Tax Code, an excise tax of four and one-half percent (4.5%) of the gross receipts or gross proceeds of each sale of the following:

. . . .

Telecommunications services that originate and terminate in this state and that originate or terminate in this state and are charged to the consumers telephone number or account in this state regardless of where the billing for such service is made, all mobile telecommunications services that are sourced to this state pursuant to the federal Mobile Telecommunications Sourcing Act, 4 U.S.C., Sections 116–126, and all local telecommunications service and rental charges, *including all installation and construction charges* and all service and rental charges having any connection with transmission of any message or image . . . .

68 O.S.2001 § 1354 (A)(4). (Emphasis added.)

¶ 12 With respect to the § 1354(A)(4) tax on the sale of "telecommunication services," the OTC promulgated O.A.C. 710:65–19–329 in 1995.[2] Although amended and renumbered over the years,[3] that rule treats as subject to tax "[c]harges for labor or repair services performed on equipment or wiring which is connected with the transmission of messages, voices or images or connected with equipment used for the transmission of messages, voices or images . . . regardless of whether the charge is stated separately from charges for either telecommunications service or for tangible personal property," and including "[c]harges for wiring or rewiring regardless of location, for use with telecommunications equipment." O.A.C. 710:65–19–329(a), (b)(5).

¶ 13 We can imagine no broader word than "all," and its use in § 1354(A)(4) clearly evinced our Legislature's intent to subject the sale of "telecommunications services," *"including all installation and construction charges,"* to tax. Consistent with the Legislature's use of "all" in § 1354(A)(4), OTC since 1995 has consistently treated "[c]harges for labor or repair services performed on equipment or wiring which is connected with the transmission of messages, voices or images or connected with equipment used for the transmission of messages, voices or images," including "[c]harges for wiring or rewiring regardless of location, for use with telecommunications equipment," as subject to tax. O.A.C. 710:65–19–329(a), (b)(5).

¶ 14 The Legislature's acquiescence to OTC's application of the broad language of § 1354(A)(4) clearly demonstrates its "approval of the administrative construction" expressed by O.A.C. 710:65–19–329(a) and (b)(5). OTC's construction of § 1354(A)(4) as requiring the collection of tax on Betts' cabling and wiring fees is consistent with the plain language of the statute, is not unreasonable, and is entitled to judicial deference.

■ ¶ 15 In this conclusion, we are supported by the most recent amendment to

---

**2.** 2 Ok. Reg. 2635, eff. June 26, 1995.

**3.** 5 Ok. Reg. 2827, eff. June 25, 1998; 22 Ok. Reg. 1587, eff. June 11, 2005.

§ 1354. In 2007, the Legislature completely rewrote § 1354(A)(4), and, effective November 1, 2007, " '[t]elecommunications services' do *not* include: ... installation or maintenance of wiring or equipment on a customer's premises." 68 O.S. Supp.2007 § 1354 (A)(4)(a)(2). (Emphasis added.) "When construing a statute which has been amended, we are mindful that the legislature may have intended either (a) to effect a change in the existing law, or (b) to clarify that which previously appeared doubtful." *Blitz U.S.A., Inc. v. Oklahoma Tax Com'n,* 2003 OK 50, ¶ 19, 75 P.3d 883, 889. The 2007 amendment must be regarded, not as a clarification, but rather, as a change in existing law, because the 2007 amendment (1) completely rewrote § 1354(A)(4), (2) deleted the broad "all installation and construction charges" clause, (3) specifically *excludes* "installation or maintenance of wiring or equipment on a customer's premises" from the meaning of "telecommunications services," (4) irreconcilably *conflicts* with the broad language of the 2001 version as *"including* all installation and construction charges," and (5) enlarged the scope of that section to include, inter alia, Internet telephony, an entirely new subject not addressed in the 2001 version. Moreover, the record reflects, and the parties cite, no confusion or doubt concerning the reach of § 1354(A)(4) before this case. *Cf., Blitz U.S.A., Inc.,* 2003 OK 50, ¶¶ 19–21, 75 P.3d at 889.

¶ 16 We therefore conclude the OTC did not err in its construction or application of 68 O.S.2001 § 1354(A)(4) in this case. The order of the OTC is AFFIRMED.

ADAMS, P.J., and HANSEN, J., concur.