2013 OK CIV APP 36

In re the Marriage of Diana HILL-
HOUSE, Petitioner/Appellant,

v.

Jeffrey Michael FITZPATRICK,
Respondent,

and

Mike Fitzpatrick and Janie Fitzpatrick,
Intervenors/Appellees.

No. 109,565.

Court of Civil Appeals of Oklahoma,
Division No. 2.

March 29, 2013.

Aubrie E. Comp, Gary Briggs, Legal Aid Services of Oklahoma, Inc., Oklahoma City, Oklahoma, for Petitioner/Appellant.

Roger Reneau, Bridget M. Childers, Reneau & Childers, Midwest City, Oklahoma, for Intervenors/Appellees.

JOHN F. FISCHER, Presiding Judge.

¶1 Diana Hillhouse (Mother) appeals the district court's order granting Mike Fitzpatrick and Janie Fitzpatrick (Paternal Grandparents) visitation with the minor child CF. Mother argues that the district court lacked jurisdiction or, if it had jurisdiction, it incorrectly applied the law.

## BACKGROUND

¶2 CF was born to Mother and Jeffrey Michael Fitzpatrick (Father) during their marriage. On July 7, 2010, Mother filed a petition seeking a divorce from Fitzpatrick. Mother requested sole custody of CF due to domestic abuse. On August 19, 2010, a temporary order was entered in the divorce proceeding, which granted sole custody to Mother and suspended Father's visitation with CF. Mother also obtained a protective order preventing Father's contact with her or CF.

¶3 On November 23, 2010, Paternal Grandparents filed a "Motion for Permissive Intervention" in the divorce proceeding and sought an order allowing visitation with their grandchildren. They alleged that they had established a loving and close relationship with their two-year-old grandson, CF, prior to Mother's separation from Father and that Mother had recently given birth to a daughter, who they had not been allowed to see. Paternal Grandparents claimed that they had a "conditional right to intervene" in the divorce proceeding pursuant to "12 O.S. § 2024(B)(1)" and "10 O.S. § 5." [1] Mother objected to Paternal Grandparents' motion and sought its dismissal, arguing that they had failed to allege sufficient grounds for the district court to interfere with her right to make decisions regarding her children. Paternal Grandparents amended their motion

to include allegations regarding "the seriousness of the situation between [Mother and Father] at separation including allegations of parental fitness, drugs, alcohol, and domestic abuse."

¶4 An evidentiary hearing on Paternal Grandparents' motion was held on January 26, 2011, at which time CF had just had his third birthday. Paternal Grandparents had not seen him since the previous May, just prior to Mother's separation from Father. Paternal Grandparents testified about the close relationship they had developed with CF since his birth. Neither one of them claimed Mother was an unfit parent, and both agreed that she was good mother, who had been very protective of CF. They did not believe that she had ever harmed, nor would she ever harm her children. They did believe, however, that CF would suffer emotional harm if they were denied continued involvement with him.

¶5 Mother testified regarding her separation from Father and how she had to seek refuge from him at a domestic abuse shelter. She testified regarding the times Paternal Grandparents had bailed Father out of jail for various crimes. She described one instance, when she observed Father in a physical altercation with his mother, which resulted in Father's arrest. For those reasons, she was afraid that, if granted visitation, Paternal Grandparents would either allow Father to visit to the children or be incapable of protecting them and preventing his access to them, despite their assurances to the contrary. Mother testified that she allowed her parents to visit CF because she felt safe doing so. She was providing appropriate care for both of her children.

¶6 The district court granted Paternal Grandparents' visitation with CF. In doing so, the court expressed these concerns:

What I find disturbing is when I suggested that [Mother] would allow the grandparents to visit with the child with a court-approved supervisor she denied that—she would not take that recommendation. And

---

1. Title 10 O.S.2001 § 5 was renumbered as Title 43 O.S. § 109.4, effective May 21, 2009. Grandparents corrected this error when they filed their

amended motion for permissive intervention on January 25, 2011.

she keeps stating that she fear[s] that [Father] would show up, he would show up. I don't believe that she's acting in the best interest of her children. For that reason, and for me, I find that it's harmful to the child if you deny the grandparents' visitation because, for one thing, every child want[s] to know where they come from. They want to know who their grandparents are. They want to know who their father is, who their mother is, no matter how bad they are.

And just because you have one rotten apple in the basket doesn't mean you have to throw the whole basket away. I mean, you can make surely [sic] there's good apples left in that basket that you can make applesauce. You can make apple pie, you know. So for me, I believe it's harmful.

The district court allowed Paternal Grandparents visitation with CF every other weekend based on its conclusion that without court-ordered visitation there would be harm to CF's "emotional state of mind."

¶ 7 Mother appeals. Her brief in chief contains two propositions of error. The first is that the district court did not properly apply section 109.4 and Paternal Grandparents failed to overcome the presumption that, as a fit parent, she was acting in CF's best interest. Mother emphasizes that the only evidence of harm or potential harm to CF was that "he would not know the paternal side of the family." In her second proposition of error, Mother asserts that the district court lacked jurisdiction to enter the order for visitation in the divorce proceeding. We find this second proposition dispositive. The district court's lack of jurisdiction is apparent on the face of the pleadings. Therefore, we do not address the merits of Mother's evidentiary challenge.

## STANDARD OF REVIEW

¶ 8 "Questions of jurisdiction may be raised at any time, either in the trial court or on appeal; and even in the absence of an inquiry by the litigants, [this] court may examine jurisdiction." *Woods Petroleum Corp. v. Sledge*, 1981 OK 89, ¶ 1, 632 P.2d 393, 394. Questions concerning a district court's jurisdictional power invoke the *de novo* standard

of review. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422. *See Stidham v. Special Indemnity Fund*, 2000 OK 33, ¶ 10, 10 P.3d 880, 885 ("Once an issue is identified as jurisdictional, it calls for a *de novo* review.").

¶ 9 This case also implicates statutory interpretation, because grandparents' rights to court-compelled visitation with a grandchild are strictly statutory. *Murrell v. Cox*, 2009 OK 93, ¶ 25, 226 P.3d 692, 698. Statutory interpretation, involving a question of law, also demands a *de novo* review standard. *Stump v. Cheek*, 2007 OK 97, ¶ 9, 179 P.3d 606, 609.

## ANALYSIS

### I. Paternal Grandparents' Rights Are Strictly Statutory

¶ 10 Paternal Grandparents' right to visitation with CF exists under limited circumstances. Title *43 O.S.2011 § 109.4* provides, in pertinent part:

A. 1. Pursuant to the provisions of this section, any grandparent of an unmarried minor child may seek and be granted reasonable visitation rights to the child which visitation rights may be independent of either parent of the child if:

a. the district court deems it to be in the best interest of the child pursuant to subsection E of this section, and

b. there is a showing of parental unfitness, or the grandparent has rebutted, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation rights to the grandparent of the child, and

c. the intact nuclear family has been disrupted in that one or more of the following conditions has occurred:

(1) an action for divorce, separate maintenance or annulment involving the grandchild's parents is pending before the court, and the grandparent had a preexisting relationship with the child that predates the filing of the action for divorce, separate maintenance or annulment. . . .

. . . .

F. 1. The district courts are vested with jurisdiction to issue orders granting grandparental visitation rights and to enforce visitation rights, upon the filing of a verified petition for visitation rights or enforcement thereof. Notice as ordered by the court shall be given to the person or parent having custody of the child. The venue of such action shall be in the court where there is an ongoing proceeding that involves the child, or if there is no ongoing proceeding, in the county of the residence of the child or parent. . . .

"When grandparents seek a court order to compel visitation with their grandchild against the consent of a sole custodial parent, a District Court must follow the grandparent visitation statute." *Craig v. Craig*, 2011 OK 27, ¶ 1, 253 P.3d 57, 58. Grandparents' rights to visitation are "not co-equal with that of a parent." *Murrell v. Cox*, 2009 OK 93, ¶ 25, 226 P.3d 692, 698 (citing *McGuire v. Morrison*, 1998 OK CIV APP 128, ¶ 9, 964 P.2d 966, 969). This is because unlike parents, grandparents "have no constitutional right to custody of or visitation with their grandchildren." *Murrell v. Cox*, 2009 OK 93, ¶ 25, 226 P.3d at 698 (quoting *Application of Grover*, 1984 OK 20, ¶ 12, 681 P.2d 81, 83). The Oklahoma Supreme Court has reiterated that the judicial power to grant grandparents visitation is circumscribed by the terms of section 109.4, leaving the district court with no excess authority. *See Craig*, 2011 OK 27, ¶ 28, 253 P.3d 57, 64 ("Consistent with our opinions from 1980 through 2009, we again hold that . a grandparent's rights to court-compelled visitation with a grandchild are statutory.").

## II. District Court Jurisdiction

¶ 11 In a case involving a district court's grant of visitation rights to a child's grandparents, over the parent's objection, the Oklahoma Supreme Court noted:

It is fundamental that jurisdiction is the authority by which courts take cognizance of and decide cases, and that the three elements necessary to the validity of a court order are jurisdiction of the person, jurisdiction of the subject matter and the power of the court to decide the particular matter and render the particular judgment at issue. Subject matter jurisdiction is essential. It is the power and authority of a court to hear and determine causes of the kind in question. Thus, a court has the jurisdiction to try an action when it has jurisdiction of the persons and the cause is the kind of a cause triable in such court, and the power to render any rightful judgment therein. Since subject matter jurisdiction concerns the competency of the court to determine the particular matter, it cannot be waived by the parties or conferred upon the court by their consent and it may be challenged at any time in the course of the proceedings. Subject matter jurisdiction is invoked by the pleadings filed with the court.

*In re A.N.O.*, 2004 OK 33, ¶ 9, 91 P.3d 646, 649 (internal citations omitted). The Supreme Court found that where there was no action brought pursuant to the provisions of the grandparent visitation statute, which at that time was 10 O.S. Supp.2000 § 5 [2], the subject matter jurisdiction of the district court had not been invoked by proper pleadings to hear and determine the cause, and therefore the district court had no jurisdiction to issue an order compelling the parents to allow visitation. *Id.* ¶ 12, 91 P.3d at 650. The Supreme Court concluded that absent compliance with the statutory provisions the district court "was not competent to pass on [the] issues" and the grandparents' efforts to obtain visitation "should have been dismissed by the trial court for lack of subject matter jurisdiction." *Id.*

¶ 12 It is clear from *A.N.O.* that a district court has no subject matter jurisdiction to consider a grandparent visitation request unless the terms of the statute have been followed. When *A.N.O.* was decided,

2. The original grandparental visitation statute was enacted in 1971. *See* 10 O.S.1971 § 5. It was subsequently amended several times, apparently in response to judicial interpretations of the statute. *See In re Application of Herbst*, 1998 OK 100, ¶ 7, 971 P.2d 395, 397 (noting that "[e]ach subsequent amendment to the statute appears primarily to have been a reaction to decisions of this Court"). As previously noted, Title 10 O.S. § 5 was renumbered as 43 O.S. § 109.4 effective May 21, 2009.

the district court's jurisdiction was invoked "upon filing of a verified *application* for such visitation rights...." 10 O.S. Supp.2000 § 5(E) (emphasis added). That language was superseded effective May 7, 2007, by the following language: "The district courts are vested with jurisdiction to issue orders granting grandparental visitation rights and to enforce visitation rights, upon the filing of a verified *petition* for visitation rights...." 10 O.S. Supp.2007 § 5(F)(1) (emphasis added). We conclude that subject matter jurisdiction of the district court to compel Mother to permit CF to visit Paternal Grandparents was not invoked by the filing of a "Motion for Permissive Intervention" in Mother's divorce proceeding. Our conclusion is dictated by clear precedent and the plain language of section 109.4. In reaching this conclusion, we are mindful that with the most recent amendment "the legislature may have intended either (a) to effect a change in the existing law, or (b) to clarify that which previously appeared doubtful." *Blitz U.S.A., Inc. v. Okla. Tax Comm'n,* 2003 OK 50, ¶ 19, 75 P.3d 883, 889. Nevertheless, "[t]he goal of any inquiry into the meaning of a legislative act is to ascertain and give effect to the intent of the legislature." *Id.* ¶ 14, 75 P.3d at 888 (footnote omitted). The legislature "is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." *Id.* (footnote omitted). Further, the words of a statute are given their plain and ordinary meaning, unless a contrary intention plainly appears. *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 11, 33 P.3d 302, 306. In Oklahoma procedural practice, an application or motion is not the equivalent of a "petition." *See* 12 O.S. 2011 §§ 1031–1033 (directing when proceedings to vacate a judgment are to proceed by motion and when they are to proceed by petition).[3] Because the words "application" and "petition" have clearly different meanings in Oklahoma jurisprudence, we conclude

the Legislature intended to clarify 10 O.S. § 5 with the 2007 amendment.

■ ¶ 13 We reach this conclusion notwithstanding the fact that *Craig v. Craig* was decided after the 2007 amendment and, therefore, the applicable version of the statute required the filing of a "petition" to invoke the district court's jurisdiction. The *Craig* opinion recites that the paternal grandparents had filed a "motion" in the parents' divorce proceeding seeking visitation with their grandchild, contrary to the mother's wishes. *Craig v. Craig,* 2011. OK 27, ¶ 0, 253 P.3d 57, 58. The grandparents in *Craig* sought a court order vesting them with their son's visitation rights, which he chose not to exercise. Their son, the non-custodial parent, had no objection to their visitation, and so the grandparents claimed that he could simply transfer his visitation rights them. The grandparents argued that they had to show only that visitation was in the best interests of the child, and that the district court could determine the visitation issue without application of the grandparent visitation statute. The Supreme Court held that a grandparent may not obtain an order compelling visitation from the district court "without either the consent of the custodial parent or application of Oklahoma's grandparent-visitation statute, 43 O.S. Supp.2010 § 109.4." *Id.* The Supreme Court did not address the jurisdictional issue we face in this case, because the grandparents in *Craig* sought transfer of their son's parental visitation rights rather than an independent right of visitation pursuant to section 109.4. Our holding in this case is consistent with *Craig.* Absent consent, a grandparent may only obtain visitation by filing a petition in a separate action pursuant to 43 O.S.2011 § 109.4.

## CONCLUSION

¶ 14 Title 43 O.S.2011 § 109.4(F) provides that the district courts "are vested with jurisdiction to issue orders granting grandparen-

---

3. The district court rules contain a specific waiver provision addressing the petition requirement in vacation proceedings. "In any proceeding to vacate, modify or reopen a final judgment that is commenced more than thirty days after its rendition, (1) proceeding by motion instead of by petition or by petition instead of by motion, or

(2) failure to verify the petition, or (3) incorrect service of process or the required notice is waived if the opposing party appears in the proceeding but does not immediately object thereto...." Okla. Dist. Ct. R. 19(a), 12 O.S.2011, ch. 2, app. There is no similar expression of intent directed to grandparent visitation proceedings.

tal visitation rights ... upon the filing of a verified petition." The district court did not have jurisdiction to compel Mother to allow Parental Grandparents visitation with CF absent strict compliance with the statute. The motion to intervene, filed by Paternal Grandparents in the divorce proceeding, did not confer jurisdiction. Therefore, we reverse the district court's order granting visitation to Paternal Grandparents.

¶ 15 **REVERSED.**

BARNES, V.C.J., and WISEMAN, J., concur.