IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF: | No. 84765-1-I |
| RENE PHILLIP DALLAS, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Rene Dallas petitions for relief from his convictions for two counts of child molestation in the first degree and three counts of rape of a child in the first degree. Dallas challenges testimony about an uncharged act admitted over his objection, based on our Supreme Court's subsequent decision in *State v. Crossguns*, 199 Wn.2d 282, 505 P.3d 529 (2022), which disallowed admission of such evidence for the purpose of showing "lustful disposition," and raises claims of ineffective assistance of counsel and cumulative error. We agree that the trial court erred in admitting evidence to show lustful disposition, but we conclude that the error did not constitute a fundamental defect that inherently resulted in a complete miscarriage of justice. We disagree with Dallas' remaining arguments and deny his petition.

## FACTS

The relevant facts recited here are taken from Dallas' direct appeal in this court.

> A.L.M.'s mother, Monique Lacasse, began dating Dallas when
> A.L.M. was about a year old. Dallas and Lacasse had two children

together, N.D. and A.D. In 2003, when A.L.M. was in second grade . . . [the family] moved into a house in Custer, Washington. . . . Lacasse and Dallas broke up in January 2008, and he moved out of the Custer house.

Ten years later, in January 2018, A.L.M. reported that Dallas had sexually abused her when she was 11 years old. Dallas was arrested and charged with child molestation in the first degree and four counts of rape of a child in the first degree for events alleged to have occurred on or about January 6, 2007 through January 9, 2008.

Before trial, Dallas moved in limine to exclude [Lacasse's] testimony regarding an alleged uncharged incident in which Lacasse saw him looking in the window of A.L.M.'s bedroom while [A.L.M.] was getting dressed. He argued that testimony about the incident was not admissible under ER 404(b) and, even if admissible, that it should be excluded because it was more prejudicial than probative. The State argued that the testimony would be admissible as evidence of a lustful disposition.

*State v. Dallas,* No. 81094-4-I, slip op. at 1-2 (Wash. Ct. App. June 21, 2021) (unpublished), www.courts.wa.gov/opinions/pdf/810944.pdf.

While the State did concede that the evidence was prejudicial, it argued that its probative value outweighed any prejudice and the court agreed, ruling that Lacasse's testimony was admissible as evidence of collateral sexual misconduct, and denied Dallas' motion to exclude. *Id.* at 4. "At trial, A.L.M. testified that Dallas began sexually abusing her the summer after she finished fifth grade, when she was about 11 years old." *Id.* at 5. She further explained that she did not tell anyone about the abuse at the time it happened because she was afraid Dallas would kill her and her family, but decided to report the abuse to law enforcement in 2018 because she wanted to ensure Dallas would not do something to anyone else. *Id.* at 6.

A.L.M testified that the first molestation incident occurred in late June 2007, and that a similar event occurred a week later. *Id.* at 5. She described nearly

identical circumstances each time, waking up in her dark bedroom to find her pajama pants pulled down and Dallas touching her, only for him to stop and leave when he realized she was awake. *Id.* A.L.M. also detailed three separate incidents throughout the second half of 2007 when she awoke to Dallas digitally penetrating her, again with him stopping and departing her bedroom when she pulled away. *Id.* at 5-6. A.L.M. asserted that she knew it was Dallas each time because she saw the silhouette of his glasses, goatee, and clothes in the light from the hallway and smelled cigarette smoke, having also explained that Dallas was a heavy smoker. *Id.* at 6. "A.L.M. did not remember any other instances of Dallas touching her inappropriately, but she testified that she woke up two other times with her pants and underwear off." *Id.*

> Lacasse then testified in front of the jury about the incident that led to Dallas moving out of the Custer house in January 2008. She and Dallas were in the living room . . . while A.L.M. was bathing after a late soccer game. Lacasse saw A.L.M. walking down the hallway to her room wearing only a towel, and then Dallas got up to go smoke. . . . She opened the front door to look outside, and the motion-sensor light turned on. She saw Dallas standing on a plastic chair and looking into A.L.M.'s bedroom window. . . . Lacasse started yelling and swearing at Dallas. He stumbled off the chair and said nothing to her. . . .
>
> A.L.M. first told Lacasse about the sexual abuse in 2016. . . . Lacasse did not make a report to law enforcement at the time because A.L.M. did not want her to, but she confronted Dallas. She said she never heard from him again after that. . . .
>
> After A.L.M. testified, the State moved to amend the information to conform to her testimony, charging Dallas with two counts of child molestation in the first degree and three counts of rape of a child in the first degree for events alleged to have occurred on or about January 6, 2007 through January 9, 2008. The jury found Dallas guilty on all counts.

*Id.* at 7-8.

On direct appeal, Dallas argued that the trial court erred in admitting Lacasse's testimony regarding the window peeping incident because it failed to find that the event occurred by a preponderance of the evidence and any probative value was outweighed by prejudicial effect. *Id.* at 11. This court held that the preponderance standard was satisfied and that the court did not abuse its discretion in adopting "the State's argument that the probative value was not outweighed by the danger of unfair prejudice." Id. at 11-12. This court also rejected Dallas' claim that that the State did not present sufficient evidence to prove each of the crimes charged beyond a reasonable doubt. Id. at 12-15. Our Supreme Court denied Dallas' petition for review. Ruling Den. Rev., *State v. Dallas*, No. 100108-8 (Wash. Dec. 1, 2021)

Dallas then filed this timely personal restraint petition.

## ANALYSIS

"Relief by means of a collateral challenge to a conviction is extraordinary and a petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). The petitioner must demonstrate that they were actually and substantially prejudiced as a result of a constitutional error, or that the trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). "The petitioner must make these heightened showings by a preponderance of the evidence." *In re Pers. Restraint of Yates*, 177

Wn.2d 1,17, 296 P.3d 872 (2013), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

I.    Admission of Evidence of Prior Misconduct

Dallas argues that collateral relief is warranted because the trial court admitted evidence in violation of ER 404(b) for the purpose of demonstrating his lustful disposition toward A.L.M.[1]  ER 404(b) prohibits admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  The same evidence, however, may be admitted for proper purposes that include but are not limited to "'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"  *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) (quoting ER 404(b)).  For evidence of prior misconduct to be admissible under ER 404(b),

> "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*Id.* at 421 (quoting *State v. Vy Thang,* 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). There is a heightened probability of prejudice in cases involving sex offenses.  *Id.* at 433.  "[I]f the evidence is admitted, a limiting instruction is required."  *State v. Arredondo*, 188 Wn.2d 244, 257, 394 P.3d 348 (2017).

---

[1] An issue previously raised and rejected on direct appeal may be raised in a personal restraint petition where, as here, there has been an intervening change in the law.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 670-71, 101 P.3d 1 (2004).

At the time of Dallas' trial and direct appeal, evidence of a defendant's lustful disposition toward a particular victim could be properly admitted under ER 404(b). *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991), *abrogated by Crossguns*. However, in *Crossguns*, our Supreme Court held that the term "'lustful disposition' must be rejected and that it may no longer be cited as a distinct purpose for admitting evidence under ER 404(b)." 199 Wn.2d at 290. The court specified that such evidence remains admissible "for some other, proper purpose, such as intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake." *Id.* at 294. Notably, "evidence of prior sexual misconduct may be relevant and admissible in cases . . . that involve sexual abuse in the context of a relationship with unequal power dynamics." *Id.* at 295.

Where a trial court erroneously admitted evidence to show lustful disposition, but the evidence is admissible on some other permissible ground, the error is harmless. *Id.* at 300. In *Crossguns*, our Supreme Court held that evidence that the defendant regularly abused the victim starting months before the charged acts was properly admitted for permissible purposes, including intent, plan, motive, opportunity, absence of mistake or accident, as well as to show the victim's state of mind for the delayed disclosure and to prove the charged aggravators. *Id.* at 296.

Here, the trial court admitted Lacasse's testimony regarding the window peeping incident solely for the purpose of showing lustful disposition, so *Crossguns* necessitates a conclusion of error. The State acknowledges *Crossguns* but argues that the window peeping evidence was relevant and admissible for other

- 6 -

permissible purposes, including Dallas' motive and intent to molest and rape A.L.M., and to prove the identity of Dallas as her abuser. Specifically, the State contends the evidence was relevant because sexual gratification is encompassed in the definition of the element of sexual contact in the crime of child molestation in the first degree which the State must prove beyond a reasonable doubt.[2] We disagree. The window peeping incident was dissimilar to the charged conduct, so it is only minimally probative regarding intent as to the child molestation charges. And neither motive nor intent are elements of rape of a child in the first degree.[3] *See State v. Saltarelli*, 98 Wn.2d 358, 364-65, 655 P.2d 697 (1982) (refusing to admit evidence of prior crimes, wrongs or acts without a careful consideration of relevance). The State did not offer the challenged evidence for any purpose other than lustful disposition, nor did the court consider any other exception. And the limiting instruction specified that the evidence could not be considered for any other purpose. The State has not established another permissible purpose to admit this evidence under ER 404(b).

We now turn to whether the improper admission of the evidence was harmless. "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120

---

[2] "A person is guilty of child molestation in the first degree when that person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13).

[3] "A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1).

(1997). Erroneous admission of ER 404(b) evidence is not of constitutional magnitude. *State v. Mezquia*, 129 Wn. App. 118, 131, 118 P.3d 378 (2005). As such, Dallas bears the burden of demonstrating that the error resulted in a complete miscarriage of justice. *Swagerty*, 186 Wn.2d at 807.

Dallas has not carried his burden under the harmless error standard. This court's recent opinion in *State v. Bartch* is instructive. No. 83386-3-I, slip op. (Wash. Ct. App. Oct. 30, 2023), www.courts.wa.gov/opinions/pdf/833863.pdf. Bartch was convicted of indecent liberties based on the State's allegations that he had sexual contact with the victim when she was incapable of consent. *Bartch,* slip op. at 1. The State offered evidence of two prior instances in which Bartch made sexual advances towards the victim, and the trial court admitted the evidence to show lustful disposition. *Id.* at 5. On appeal, we held that *Crossguns* mandated a conclusion of error and that the evidence was not admissible for any other permissible purpose. *Id.* at 6. We then concluded that the error was not harmless because there was a reasonable probability the outcome of the trial may have been affected:

> The State asked the jury to particularly rely on the other acts evidence in presenting its case. The State highlighted Bartch's prior advances by starting its opening statement with a description of them as the beginning of a continuous longing by Bartch ("begged") to have sex with S.P. and waiting until she was helpless. In closing, the State described S.P.'s incapacity as "an opportunity that Bartch had been thinking about for a long time" and that, "as time went on, he felt he was entitled to sex he was owed." There was competing testimony as to how much alcohol S.P. consumed, when she stopped drinking, and S.P.'s mental state when she was in the bedroom with Bartch. The history and nature of the relationship between S.P. and Bartch therefore had a reasonable probability of being of particular significance to the jury.

*Id.* at 10.

Here, in contrast, the State did not rely on the other acts evidence in presenting its case. In closing, the State emphasized that "if you find [A.L.M.] credible, you believe what she told you, you believe her about the sexual abuse she endured, that is proof beyond a reasonable doubt that the defendant is guilty as charged." The State then argued that the jury should convict Dallas even if it concluded that Lacasse's testimony was not credible:

> But the issue with that line [of] attack in this case is that it really doesn't matter. [Lacasse] didn't witness any of the physical abuse. The only person that witnessed and experienced that was [A.L.M.].
>
> Obviously, she testified she saw the voyeurism or the peeping incident. That tells you a little bit about the defendant's disposition and feelings towards [A.L.M.], but, again, she was never a witness to anything that the defendant is charged with. Your best evidence of what happened to [A.L.M.] is what [A.L.M.] told you what happened here.
>
> The other issue with the line of attack going after [] Lacasse is that it does nothing to affect [A.L.M.'s] credibility. [Lacasse] could be the least credible person in this trial and you can find that if that's your determination but that does nothing to affect [A.L.M.]. We already talked about why [A.L.M.] is credible, why you should believe her and why you should convict the defendant.

Defense counsel acknowledged in closing that the prosecutor "rests his entire case on [A.L.M.'s] testimony." In light of the manner by which the State treated this evidence in the context of its arguments, Lacasse's testimony regarding the window peeping incident was likely not of particular significance to the jury and did not result in a complete miscarriage of justice.

II.     Ineffective Assistance of Counsel

Dallas next argues he received ineffective assistance of counsel at trial. Allegations of ineffective assistance of counsel present mixed questions of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to the effective assistance of counsel in criminal proceedings. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on this claim, Dallas must demonstrate that defense counsel's performance was deficient and the deficient performance resulted in prejudice. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing *Strickland v. Wash.*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)). A petitioner who meets both prongs of the test "has necessarily met [their] burden to show actual and substantial prejudice" in order to succeed on a personal restraint petition. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846, 280 P.3d 1102 (2012). But failure on either element of the test ends our analysis. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

"Deficient performance is performance falling 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246

P.3d 1260 (2011). Performance is not deficient when counsel's conduct can be characterized as reasonable trial strategy or tactics. *Id*. A defendant can rebut this presumption by demonstrating that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

"We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). "The prejudice prong requires the defendant to prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. Although this standard is lower than a preponderance standard, the defendant must affirmatively "show more than a 'conceivable effect on the outcome.'" *Estes*, 188 Wn.2d at 458 (internal quotation marks omitted) (quoting *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Dallas argues defense counsel's performance was constitutionally deficient because counsel failed to obtain and present documentary evidence from independent sources to corroborate defense witness testimony that Dallas moved out of the Custer house in 2006, before the alleged abuse occurred. In support of this argument, Dallas provides the declaration of defense attorney J. Brendan Kidd, who opined that counsel's failure to present this evidence cannot be considered a valid trial strategy because it did not advance Dallas' alibi defense

and that there is a reasonable probability the results of the trial would have been different if these documents had been introduced. However, as the State points out, the admission of these documents would not have shown that Dallas lacked access to A.L.M. during the relevant time frame. Dallas' own witnesses testified that he maintained a tumultuous on again, off again relationship with Lacasse before, during, and for a number of years after he moved out of the Custer house. Dallas and other defense witnesses testified that Dallas kept some of his belongings at the house after he moved out and that he would go there occasionally to work on the house or to visit with his children.

In accordance with this evidence, the State argued in closing that, even if the jury were to believe that Dallas was not residing at the house when the alleged sexual assaults occurred, the evidence shows he still had access to A.L.M. during the relevant time frame:

> But let's say that you believe that he moved out in 2006. Okay. What's that leave you with? The witnesses testified he is still in a relationship with [Lacasse]. It was on again. It was off again, basically, from the time they met in the late 90's until they finally called it off in the late 2010's. They have a history of not living together. Whatever it means to live together. Residing together, um, but they have a history of spending the night together. You heard that from the defendant that at the Main Street apartments in Ferndale, the defendant wasn't living there. But he would spend the night there, shortly after [N.D.] was born. You heard that was another regular occurrence at the Washington Street apartments in Ferndale, that the defendant didn't consider himself residing there but he would spend time there. He would spend the night there with [Lacasse]. So if you don't believe that he was living, residing, however you want to couch it, in the [Custer] house at the time that this—these events occurred, you still have the evidence that he went over to the [Custer] house. You heard that he went there to work on the house. You heard from Mr. Dawson that they would go over to spend time with [N.D.], to play video games with [N.D.] when [N.D.] was 9 or 10. [N.D.] was born in 2001, so when that was 2010 to 2011. They were

still in a relationship, he was still going over there, he was still spending the night. That gave him access to [A.L.M.] and that gave him opportunity to commit these crimes.

Because admission of these documents would have had little impact in light of the State's theory as to how and when Dallas sexually abused A.L.M., Dallas has not shown that the outcome of the trial would have been different had they been presented to the jury.

Dallas also argues counsel performed ineffectively by failing to offer evidence to rebut Lacasse's testimony that the window peeping incident occurred in January 2008. Dallas points to a petition for order of protection filed by Lacasse in 2010, in which she stated that the window peeping incident occurred in January 2007. Dallas argues that the trial court likely would not have admitted Lacasse's window peeping testimony were it aware of the discrepancy. Dallas also argues that the omission could not have been strategic because defense counsel had already mentioned the protection order during direct examination of Dallas and his mother. However, this evidence would not demonstrate the window peeping incident never occurred, but that it may have occurred a year earlier. And, although the evidence might have been minimally relevant to impeach Lacasse's credibility, any prejudice was minimized by the State's argument that the jury should convict Dallas even if it did not believe Lacasse at all. We cannot say that the outcome of the trial would have been different had defense counsel introduced this evidence.

III.    Cumulative Error

Dallas asserts that cumulative error warrants a reversal of his convictions. "Under the cumulative error doctrine, we may reverse a defendant's conviction

when the combined effect of errors during trial effectively denied the defendant [the] right to a fair trial even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010). A cumulative error claim that relies on a single, nonprejudicial error fails. *See, e.g., Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012); *State v. Yarbrough*, 151 Wn. App. 66, 97-98, 210 P.3d 1029 (2009). Dallas has not shown a fundamentally unfair trial based on cumulative errors and is not entitled to a new trial.

We therefore deny this petition.

_____

WE CONCUR:

_____
Díaz, J.

_____
Mann, J.